(No. 11131.—Rule made absolute.)

THE PEOPLE *ex rel.* E. E. Black *et al.* Relators, *vs.*
ORVILLE A. SMITH, Respondent.

*Opinion filed October 27, 1919—Rehearing denied Dec. 5, 1919.*

1. DISBARMENT—*fact that fine has been assessed against attorney is not, alone, ground for disbarment.* The fact that a fine has been assessed against an attorney or evidence that he has visited disorderly houses will not, alone, warrant his disbarment, but such evidence may be considered in connection with other evidence in determining whether he is a proper person to hold a license to practice law.

2. SAME—*where attorney's acts constitute a crime it is not necessary that he be convicted before he can be disbarred.* It is not essential that a conviction of an attorney for a crime committed by him be had as a basis of disbarment on account of the acts constituting the crime.

3. SAME—*attorney should make remittance of collection as soon as possible.* It is the absolute duty of an attorney to forthwith notify his client of a collection made and to make remittance, less the attorney's proper charges, as soon as he can reasonably do so, and the practice of retaining money collected for clients for an indefinite period deserves the severest reprobation.

4. SAME—*leave to amend count to correspond to proof must be obtained from Supreme Court.* In a disbarment proceeding, if the evidence does not fully correspond with the charge as laid in a certain count in the information the action of the commissioner in refusing to permit the relators to amend their count is proper, as leave to amend must be had from the Supreme Court.

5. SAME—*an attorney may be disbarred for converting client's property to his own use.* Conversion of the property of his client by an attorney to his own use is an offense that cannot in any degree be countenanced, and when a lawyer so conducts himself that confidence can no longer be placed in him with safety he should be disbarred from practice.

INFORMATION to disbar.

E. E. BLACK, State's Attorney, (FRANKLIN L. VELDE, and RALPH DEMPSEY, of counsel,) for relators.

O. A. SMITH, *pro se,* and GEORGE B. SUCHER, for respondent.

290—16

Mr. JUSTICE THOMPSON delivered the opinion of the court:

. An information on the relation of the State's attorney of Tazewell county and certain members of the bar of that county was filed·in this court at the October, 1916, term, for the disbarment of Orville A. Smith, respondent, as a practicing attorney and to strike his name from the roll of attorneys. The information consisted of twenty counts, but counts 1, 2 and 3 were stricken and counts 9 and 10 have been abandoned by relators. Respondent answered the information, denying in general all the allegations. The matter was referred to a commissioner to take and report the proofs, together with his conclusions and recommendations. The commissioner found respondent guilty of the charges set forth in counts 4 to 6, inclusive, and 11 to 18, inclusive, but that counts 7, 8 and 20 were not sustained by the evidence, and that as to count 19 the evidence did not correspond fully to the charge. Respondent filed exceptions to the report of the commissioner as to all his findings except as to counts 7, 8 and 19, and relators filed exceptions to the commissioner's finding as to count 19, and also as to his ruling·denying to relators the right to amend that count to make it correspond to the evidence.

The fourth count charges that November 11, 1909, respondent was fined for carrying concealed weapons and for creating a disturbance in a disorderly house in the city of Pekin, and that respondent for a year prior to that date had frequented disorderly houses in that city and on such occasions carried and displayed a revolver and created disturbances. The evidence as to this charge shows that respondent did frequent such disorderly houses as often as three times a week and that he remained in such houses as late as three o'clock in the morning. On behalf of the relators, evidence was adduced to the effect that respondent visited these houses as a patron, while he insisted that some

of his visits were pursuant to a commission by the mayor of Pekin as a secret service agent to check up certain police officers in order to ascertain what their habits were with reference to visiting such houses, and some of his visits were professional calls, pursuant to employment as an attorney by the keepers. We think the evidence shows that, irrespective of whether respondent was, in fact, an officer under appointment by the mayor, as testified to by him, and irrespective of his employment as an attorney by the keepers, he did visit such houses as a patron. We do not feel that the fact of a fine having been assessed against respondent or the evidence of his having visited disorderly houses in Pekin, as disclosed by the record, in and of itself would warrant us in disbarring him, but such evidence may be considered in connection with the other evidence in the case in determining whether respondent is a fit and proper person to hold a license to practice law in this State.

The fifth count charges that respondent committed perjury in an affidavit filed by him November 21, 1911, with the clerk of the Appellate Court for the Third District; that said affidavit was attached to a motion to re-instate in said court the case of Jibben *vs.* National Cash Register Company; that the case was originally tried in the circuit court of Tazewell county and judgment entered against Jibben, who was a constable; that respondent, as attorney for Jibben, prayed for and was allowed an appeal to the Appellate Court; that an appeal bond was filed but no transcript; that at the May term, 1911, of said Appellate Court the attorney for the company filed a certificate in accordance with the statute, and the court affirmed the judgment. The affidavit stated that shortly after the trial was concluded in the circuit court respondent requested the clerk of that court to prepare a complete transcript of the record, and that the clerk advised him that the record had not then been written up and that it would require considerable time

for him to write up the record and prepare the transcript; that later, on May 20, 1911, respondent again went to the office of the circuit clerk for the purpose of securing the transcript, and that, relying on the conversation had with the clerk, he believed the transcript would be ready at that time. The count further charges that respondent did not request the circuit clerk to prepare a transcript, but, on the contrary, notified the clerk that he (respondent) would prepare the transcript and present the same to the clerk for comparison and signature. The affidavit further stated that respondent was not aware that a certificate had been issued until July, 1911, about the time the clerk of the circuit court had written respondent that the company had asked for a *procedendo,* and that the respondent had no knowledge relative to the existence of such certificate until a considerable space of time after the Appellate Court had adjourned. The count further charges that respondent had personal knowledge of the affirmance of such judgment by the Appellate Court about the 20th of June, 1911. The evidence clearly sustains this count. The only conclusion to be drawn from this evidence is that respondent made the affidavit in question willfully and corruptly, with the intention of wrongfully inducing the Appellate Court to re-instate the case.

The sixth count charges that the respondent committed perjury about March 9, 1914, in the case of Lucas *vs.* C. O. Smith, in the circuit court of Tazewell county; that one of the issues involved in that case was whether the name "C. O. Smith," appearing in the entry book of the recorder of that county, was the genuine signature of said C. O. Smith; that respondent testified falsely before the master in chancery to the effect that said signature was the genuine signature of C. O. Smith, whereas, in fact, the signature was in the handwriting of respondent. C. O. Smith is a brother of respondent but was not called as a witness. The testimony of respondent before the master was pro-

duced, wherein he testified that the signature on the entry book was that of C. O. Smith. Various notes and checks showing the genuine signature of C. O. Smith were produced, and witnesses with a knowledge of handwriting testified, after an examination of such purported signature in the entry book and the genuine signatures of C. O. Smith on the checks and notes, that in their opinion the signature in the entry book was not the genuine signature of C. O. Smith. The commissioner was justified in finding that the evidence supported this count.

Counts 11 to 14, inclusive, relate to respondent's dealings with the American General Agency Company and the Pioneer Life Insurance Company. These counts charge that respondent, together with Milton W. Sutton and George L. Colburn, under cover of their connections with these two companies, obtained $4317.49 from said companies by the confidence game; that they were indicted by the grand jury of Tazewell county, Illinois, but because the record did not show that the indictment was returned into open court the case was dismissed, and that the Statute of Limitations had then run. The evidence shows that respondent was general counsel for the two companies in May, 1911; that he was also director of the agency company and trustee of the insurance company; that at the time he became connected with these two companies they were both insolvent; that the insurance company was in disfavor with the insurance department of the State; that these parties caused the entire assets of the insurance company to be turned over to the agency company while the two companies were insolvent; that after such transfer all the assets so turned over were used by said parties in liquidating certain prior advances which they claimed they had made and in paying large fees to themselves. Respondent was the moving spirit in these transactions and acted as general counsel for the two companies at a time when their interests were conflicting. Count 15 is closely related to counts 11 and 14, *supra,*

and charges respondent with the embezzlement of $2000 of the funds of the agency company, for which he was indicted, but that case was also dismissed on the same technicality. The evidence as to the transactions involved in counts 11 to 15, inclusive, is voluminous, and after giving it careful attention no other rational conclusion can be drawn than that the charges contained in these counts are fully sustained. It is not essential that a conviction of an attorney for a crime committed by him be had as a basis of disbarment on account of the acts constituting the crime. *People* v. *Meyerovitz,* 278 Ill. 356.

Count 16 charges respondent with obtaining a deed to certain land in Tazewell county from Rebecca Kepcha in favor of said Colburn referred to in counts 11 to 14, *supra;* that an appeal was taken by Mrs. Kepcha from a decree of the circuit court of Tazewell county in a partition proceeding, and the deed to Colburn was avowedly given as security for Colburn's signing the appeal bond; that the appeal was dismissed by reason of the failure of respondent to properly perform his duty as attorney for Mrs. Kepcha, and that thereafter a writ of error was sued out in the Supreme Court to review the decree of the lower court and a decision was rendered reversing the decree of the lower court, by means of which decision Mrs. Kepcha became entitled to a larger portion of the estate. The count further charges that pending the appeal respondent received from the master in chancery the share of Mrs. Kepcha, as decreed by the circuit court, which share amounted to $762.91; that after the decision by the Supreme Court respondent demanded that the purchaser at the partition sale pay to Colburn the difference which would be coming to Mrs. Kepcha, and upon refusal by said purchaser to pay, caused an execution to issue in the name of Colburn and a sale to be had, respondent becoming the purchaser at the sheriff's sale; that he assigned the certificate of purchase and afterwards received from the assignee on account thereof the sum of

$1510.55; that respondent never notified Mrs. Kepcha, his client, of the receipt by him of her share from the master in chancery; that neither did he notify her of the receipt of the money from the assignee of the certificate of purchase, and that Mrs. Kepcha did not receive any money from respondent until 1914, when he made a settlement with her for the sum of $250. Respondent admits that he was the attorney for Mrs. Kepcha until after the decision by the circuit court but that thereafter he ceased to be her attorney and was the attorney for Colburn. He admits receiving Mrs. Kepcha's share from the master in chancery, but contends that he was authorized to use that money to pay him for certain moneys laid out, together with his fee. With reference to the money which he received from the assignee of the certificate of purchase, he contends that $814 of that money was paid to Colburn for money advanced by the latter and $1000 was paid to Colburn as his remuneration for assuming the risk in becoming surety on the appeal bond. The evidence does not bear out respondent's contentions. It is apparent that he, while purporting to appear as attorney for Mrs. Kepcha, was, in fact, furthering his own interests by using Colburn's name. Respondent's conduct in this case was highly reprehensible,—in fact, nothing less than criminal. Here he received the share of his client and retained the same for the space of two years and then paid her only a portion of what was justly due her. It is the absolute duty of a solicitor or attorney to forthwith notify his client of a collection made on his account and to make remittance to him, less his proper charges, as soon as he reasonably can do so after the receipt of his client's money. The practice indulged in by some solicitors and attorneys of retaining money collected for clients for an indefinite period deserves the severest reprobation. The respondent not only retained the money for the space of two years, but it became necessary for Mrs. Kepcha to institute suit and then finally to accept a

lesser amount than was justly due her rather than chance losing it all.

Count 17 charges that in 1908 respondent was indebted to Eugenia Bequeath, his stenographer, in the sum of $700 and gave her notes covering the same; that after September 20, 1909, when she left his employ, she removed these notes to her home; that about two weeks later, when she looked for the notes in question, they were missing; that respondent endeavored to induce the servant at the home of Eugenia Bequeath to leave the door unlocked so that he could get into the house; that the servant refused to comply with his request; that shortly thereafter the servant saw respondent in the upper part of the Bequeath home while Eugenia Bequeath was in the cellar, and that it was shortly after this occasion that the notes were missing; that there were other valuable papers and valuables in the same place as the notes but such other valuable papers and valuables were not molested. While respondent denies the allegations of this count and while the evidence is not of that satisfactory character which we would demand if this count were the only charge against respondent, still we cannot say that the commissioner was not justified in his finding that the count was sustained by the proof.

Counts 18 and 19 relate to certain dealings of respondent as attorney for Martha O. Berger. Mrs. Berger was administratrix of the estate of her brother, John W. Neville, of Hopedale, Tazewell county. The eighteenth count charges that in 1903 respondent attended a sale of personal property in the estate of John W. Neville, deceased, and received the purchase price of the articles sold, amounting in all to $186; that he advised Mrs. Berger that the money should be deposited in a Pekin bank rather than in the Hopedale bank; that Mrs. Berger acquiesced, and that he told her he would take the money with him to Pekin and deposit it in the bank to her credit; that instead of so doing he deposited the money to his own credit and used the

same; that one of the creditors of Mrs. Berger caused her to be cited before the county judge of Tazewell county to show cause why the funeral expenses of John W. Neville had not been paid; that she advised the county judge that the funds were in the possession of respondent; that respondent was summoned to appear before the county judge, and that he admitted to the judge that he had not deposited any part of the funds to the credit of the administratrix but had appropriated them to his own use; that respondent was then advised by the judge to restore said funds, and that respondent then induced Mrs. Berger to sign his note as surety at a Pekin bank so that he could obtain the money to replace the amount so appropriated by him. The evidence fully sustains the count in every particular, and in addition thereto shows that Mrs. Berger, after becoming surety on the note in question, was compelled to pay the note.

The nineteenth count charges that at a partition sale of the Neville real estate Mrs. Berger became the purchaser and it became necessary that she secure a loan of $5000; that in addition to the execution of a trust deed securing this loan respondent induced Mrs. Berger and her husband to deliver to him a deed to the property so purchased by her, at an expressed consideration of $10,000, no money passing hands; that respondent represented to Mrs. Berger that the person from whom he would secure the loan of $5000 required this deed to be made; that the trustee knew nothing of the transaction except that as a matter of convenience respondent had used his name as trustee in the trust deed. The count further charges that when respondent filed the deed for record he caused to be noted upon the entry record, in pencil, the words "Please do not publish," and that respondent refused to re-convey these premises to Mrs. Berger until the county judge of Tazewell county again summoned respondent before him and advised him that unless he immediately re-conveyed to Mrs. Berger suit would be instituted. Respondent admits the making of

the deed but denies that it was secured by him wrongfully and without consideration. Mrs. Berger was an elderly woman of but limited education and apparently did not understand the effect of the conveyance made by her husband and her to respondent. The evidence shows that after this conveyance had been made Mrs. Berger went to the Hopedale bank and desired a small loan but was advised by the banker that there was a recorded deed conveying her premises to respondent, and it was then that Mrs. Berger came to Pekin to ascertain the facts with reference to the recorded deed. The commissioner found that the evidence did not correspond fully with the charge as laid in the nineteenth count, and then relators asked the commissioner's leave to file an amended nineteenth count, which was denied on the ground that he did not have such authority. The commissioner ruled properly in denying relators leave to file an amended nineteenth count. Such leave, if obtained, must be had from this court.

The commissioner found that as to the seventh, eighth and twentieth counts the evidence did not sustain the charges. The evidence on the seventh count showed that respondent represented to a justice of the peace of Tazewell county that he (respondent) had made an examination of the records of the office of the county clerk and that the justice's name did not appear of record in such office, and that by reason thereof the justice had no power to act and that it was his duty to dismiss the case; that the justice, relying upon such representations, entered a dismissal. The evidence on the eighth count shows that respondent agreed with certain creditors of Frank Evans that he would pay the court costs in case the creditors were unsuccessful in the case of Jibben *vs.* National Cash Register Company, Jibben being only the nominal plaintiff. The evidence as to the twentieth count shows that respondent made misrepresentations to the sheriff of Tazewell county with reference to subpoenaing a witness in a case then pending

in the courts of that county; that while respondent pretended that he wished to have the witness in question subpoenaed, still he was endeavoring to prevent the service of the subpoena; that when the subpoena was returned, to the effect that the witness could not be found, respondent induced his client to make affidavit in support of a motion for continuance based upon the inability to produce such witness. .

The evidence on counts 4, 7, 8, 19 and 20 may properly be considered by the court with the evidence on the other counts in determining whether respondent is a proper person to hold a license to practice law, but even though such evidence be not considered by us, the evidence as to the other charges clearly shows that his license should be revoked.

No office offers greater opportunity for honorable service than that of attorney at law. To the great privilege conferred on a man given leave to practice this high calling there is added the equally great responsibility of upholding the ideals of the learned lawyers of earlier days. Into the hands of the lawyer are intrusted the property of the citizen, the savings of the widow, the inheritance of the helpless orphan and the life of the unfortunate man. The only guaranty that this trust will be honorably executed is the character of the lawyer. Character can only be judged by reputation and conduct. When a lawyer so conducts himself that confidence can no longer be placed in him with safety his usefulness to the court and State has ceased. Here the respondent has committed the one offense that can not, under any circumstances, be tolerated: He has betrayed helpless clients and deprived them of property which he was employed to secure for them. Other offenses might be excused, but conversion to his own use of the property of his client is an offense that cannot in any degree be countenanced. Respondent has been guilty of not one but several such offenses. His conduct has been such that it would be a grave injustice to other members of the pro-

fession to permit such as he to continue to hold the license of this court.

The rule is made absolute and respondent's name is stricken from the roll of attorneys.

*Rule made absolute.*