(No. 49023. )

*In re* JOSEPH E. STILLO, Attorney, Respondent.

*Opinion filed October 5, 1977.*

John C. O'Malley, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Joseph E. Stillo, *pro se.*

MR. JUSTICE RYAN delivered the opinion of the court:

Respondent, Joseph E. Stillo, was admitted to the Illinois bar on February 8, 1944. In December of 1975 the Administrator of the Illinois Attorney Registration and Disciplinary Commission filed a four-count complaint with the Commission's Hearing Board charging respondent with professional misconduct tending to bring the legal profes-

sion into disrepute. The matter was assigned to a panel of the Hearing Board. The report of the Hearing Board recommended that respondent be suspended from the practice of law for three years as a result of the misconduct evidenced by count I, and that he be disbarred based upon the misconduct catalogued in count II. The Board recommended no disciplinary action with respect to the allegations of counts III and IV, concluding that the Administrator had not sustained his burden of proof as to these counts. The Board did, however, express the opinion that respondent was not truthful in his testimony before the hearing panel on counts II and III and, for this reason, recommended disbarment independent of the allegations in the Administrator's complaint. The Review Board of the Attorney Registration and Disciplinary Commission filed its report, unanimously affirming the findings and conclusions of the Hearing Board, but recommending that the discipline imposed be disbarment, without specifying the counts upon which discipline is imposed. Respondent has filed exceptions to the Review Board's recommendations on counts I and II.

The respondent was charged in count I with overreaching, breaching his fiduciary duty to a client, and unethical conduct, in that he borrowed funds from a client which he failed to repay pursuant to the terms of the loan. Mrs. Fern Giannecchini received $20,000 in life insurance proceeds upon the death of her husband. She sought investment advice from respondent on July 18, 1973. He advised her to invest $10,000 in certificates of deposit and to invest the remaining $10,000 with him. Mrs. Giannecchini did as respondent advised. She testified before the Hearing Board that she and respondent agreed at that time that the loan of money to respondent would be for one year at 8% interest. Respondent testified that he tendered a promissory note to Mrs. Giannecchini within a few days of their July 18 meeting, which she refused to accept. She

testified, however, that he tendered no note to her until March 11, 1975, when he appeared before an inquiry board convened to investigate various complaints about his conduct. Further, even the note which respondent purportedly tendered in July 1973, and which Mrs. Giannecchini allegedly refused, was for a five-year period, rather than the one-year term expected by Mrs. Giannecchini. In any case, in September 1973, respondent requested and received an additional $3,500 from Mrs. Giannecchini as a short-term investment. There is no dispute that he gave her a promissory note for that amount at 8% interest per annum, due on or before January 1, 1974. This note was not paid when due and, in September or October of 1974, after frequent unsuccessful attempts to contact respondent, Mrs. Giannecchini engaged other counsel to recover all money owed her by respondent. In March 1975, as a result of negotiations with Mrs. Giannecchini's counsel, and following the inquiry board hearing, respondent signed a promissory note for all amounts borrowed from Mrs. Giannecchini plus interest, the final installment on which was to be paid by May 24, 1976. The respondent, in his brief filed in this court, states that this obligation has been paid in full, including interest.

In count II of the Administrator's complaint respondent was accused of conduct constituting conversion of funds, fraud, deceit, and misrepresentation. On December 16, 1968, Nilda Pillichi (now Nilda Alavazo) retained respondent to handle a personal injury claim for her. She did not meet with respondent, but arranged for the representation through Richard Pusateri, who was apparently a former client of respondent. On April 3, 1969, without the knowledge of Mrs. Alavazo, respondent settled her claim and received a check for $1,350 from State Farm Insurance Company. The check, purporting to bear the endorsement of Nilda Pillichi, was deposited in respondent's bank account on April 10, 1969. Mrs. Alavazo first

learned of this forged endorsement, as well as a forgery of her signature on a release of claim form, when she hired other counsel in 1974. Respondent testified that he gave the release form and the check from State Farm to Mr. Pusateri for the purpose of obtaining Mrs. Alavazo's signature, which he purported to do. He further testified that in 1969 he gave Mr. Pusateri $900 in cash to transmit to Mrs. Alavazo in settlement of her claim. The evidence indicates, however, that subsequent to this alleged settlement he continued to tell Mrs. Alavazo that her case was still pending, and from 1972 to 1974 he sought her permission to settle it for $300 or $500. Further, on February 24, 1976, after Mrs. Alavazo had engaged other counsel and after the inquiry board had begun its investigation, respondent paid Mrs. Alavazo $1,500, which amount represented the $1,350 settlement plus what respondent considered fair interest for the delay in payment.

The Review Board recommended disbarment on counts I and II after finding that the Administrator proved by clear and convincing evidence that respondent failed to give Mrs. Giannecchini proper evidence of their transaction and failed to repay her upon request, and that his conduct with respect to Mrs. Alavazo constituted conversion of his client's funds. We do not disagree with the Review Board that the total conduct detailed above tends to bring the legal profession into disrepute and merits the sanction of disbarment.

Respondent's conduct in relation to Mrs. Giannecchini can be fairly characterized as overreaching. He took advantage of the position of influence which an attorney naturally holds *vis-a-vis* a client to procure from her a loan of money without reaching an understanding as to the terms of the loan's repayment. He then compounded his misconduct by failing to pay the one note upon whose maturity date they had agreed. It seems indisputable that

his actions regarding the loans from Mrs. Giannecchini were calculatedly in his own self-interest and against the interests of his client, and thus were actions which tend to bring the profession into disrepute and which call for some measure of discipline. (*In re Certain Attorneys,* 351 Ill. 206, 222.) That respondent's conduct, taken all in all, warrants disbarment is made manifest by his dealings with Mrs. Alavazo. For an attorney to settle a personal injury case and direct the cashing of settlement checks without authorization by his client is itself an impropriety requiring discipline. (*In re Agin,* 45 Ill. 2d 126, 131.) When a lawyer, further, converts a client's funds to his own personal use he commits an act involving moral turpitude, and, in the absence of mitigating circumstances, such conversion is a gross violation of the attorney's oath, calling for the attorney's disbarment. (*In re Royal,* 29 Ill. 2d 458, 464; *In re Ahern,* 26 Ill. 2d 104, 110.) "Other offenses might be excused, but conversion to his own use of the property of his client is an offense that cannot in any degree be countenanced." (*People ex rel. Black v. Smith,* 290 Ill. 241, 251.) We agree with the findings of the Hearing Board and the Review Board that respondent settled Mrs. Alavazo's claim and then procured the cashing of the settlement check without her knowledge or authority. It taxes the limits of credulity to entertain the belief that respondent obtained Mrs. Alavazo's signature through Mr. Pusateri and then transmitted $900 to her in cash in the same manner, when he repeatedly over the next four years told her that her case was still pending and offered her settlements of $300 and $500. We therefore concur in the recommendations of disbarment made by both boards on the basis of those allegations of the complaint on which the Administrator sustained his burden of proof.

We note also, however, that the Hearing Board stated its opinion that respondent was not truthful in the presentation of his defense to counts II and III. The

Review Board consequently recommended disbarment on the basis of such conduct before the Hearing Board. In respect to count II, as aforementioned, the Hearing Board doubted the veracity of respondent's claim that he attempted to procure Mrs. Alavazo's signature on the two documents in question and that he disbursed $900 to her through Mr. Pusateri in cash in 1969. Further, the Board doubted the authenticity of certain accounting notations alleged by respondent to have been made contemporaneously with the payment of the $900. Similarly, in defending the charge of count III—that he failed to file a petition for permanent visa on behalf of a client after accepting a fee to do so—respondent offered, and then withdrew, a document which purported to be the original of the petition, dated February 1974. The Administrator then had it admitted into evidence and, after due consideration, the Hearing Board concluded that in fact it was the same document which, on March 11, 1975, had been submitted to the inquiry board without a date; therefore, the "February 1974" notation must have been added at some time subsequent to March 1975.

Although an attorney can be tried only on the charges filed against him (58 Ill. 2d R. 753(b)), the giving of false testimony demonstrates a further unfitness of an attorney to practice law. (*In re Eaton*, 14 Ill. 2d 338; *In re Rosenberg*, 413 Ill. 567; *In re Certain Attorneys*, 351 Ill. 206.) In determining the severity of the discipline to be imposed, we cannot ignore this highly unprofessional conduct. We have read the respondent's testimony and have examined the exhibits. The record discloses not only the devious nature of respondent's conduct in dealing with his clients, but also an equally deceptive attitude and conduct before the Hearing Board.

The charges of counts I and II have been established by clear and convincing evidence. It is the order of this court that the respondent be disbarred.

*Respondent disbarred.*