128

(No. 50629.— ▮▮▮▮▮▮▮▮▮)

*In re* JOHN JOSEPH TURNER, Attorney, Respondent.

*Opinion filed January 12, 1979.*

John C. O'Malley, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Thomas A. Hett, of Shea & Hett, Ltd., of Berwyn (Gerald W. Shea and Ira A. Rogal, of counsel), for respondent.

MR. JUSTICE RYAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a two-count complaint against attorney John Joseph Turner, charging him with conduct which tends to bring the legal profession into disrepute. Turner was admitted to the bar in 1955. The first count alleged that Turner commingled and converted funds he received on behalf of three clients for the settlement of their personal injury claims. The second count charged him with false testimony before a panel of the Inquiry Board in connection with an investigation of his actions. After a hearing, the hearing panel recommended that Turner be suspended from the practice of law

for 5 years. The Review Board agreed that Turner's conduct warranted discipline, but reduced the suspension period to 3 years.

Turner had been retained by Margaret Meegan, Veronica Meegan and Irene Dion to represent them in claims against Arthur Svane for injuries they suffered in an automobile collision. Turner received a settlement offer of $850 from Svane's insurer; $150 to Margaret Meegan, $100 to Veronica Meegan, and $600 to Irene Dion. On November 29, 1973, Turner sent releases to the three. They signed the releases and returned them to Turner. On December 26, 1973, the insurer issued a check for $850, payable to the three women and to Turner and an associate. Turner signed the names of the three clients on the back of the check without their authorization and deposited it in his personal account at a bank in Chicago on January 21, 1974. The handwriting of the signatures is somewhat different for each name, a different slant and formation of the lettering. Several days later, the account was almost $500 overdrawn, and on January 30, 1974, the account was overdrawn more than $2,000. Turner did not contact any of the clients, nor did he send them the proceeds of the settlement. Margaret Meegan later testified that from December 1973 to February 1976, she telephoned Turner's office between 150 and 200 times, but was never able to speak with him. In February 1976, Margaret Meegan filed a complaint with the Attorney Registration and Disciplinary Commission. On February 16, 1976, Turner sent a letter to the Commission in response to its inquiry. In the letter he stated that the lawsuit had been dismissed before settlement was completed and asserted that he had paid the clients their agreed-upon amounts. In reality, the case had not been dismissed prior to settlement and Turner did not pay the three clients until August 3, 1976, one day before his scheduled hearing before the inquiry panel.

At the hearing before the inquiry panel on August 4, 1976, Turner testified that the case had not been settled but had been dismissed due to his neglect. He did not tell the panel that he had received a check and deposited it in his own account, but did remember the settlement agreement when he was shown the check.

On June 1, 1977, a hearing was held before the hearing panel. In his testimony, Turner admitted that he had no written authority to sign the clients' names to the check. He admitted signing the names, however, admitted depositing the money in his personal account, and admitted it was subsequently overdrawn. He also admitted that the representations he made to the inquiry panel in his letter and testimony had been mistaken; he stated that at the time, he had honestly believed them to be true. Although he had notified the Board that he had paid the clients, he only intended to send a check immediately. He specifically stated that he had no present recollection of the circumstances under which he had endorsed the check and deposited it in his personal account. The first time he had any knowledge of the settlement was when he was shown the check at the hearing before the Inquiry Board. He denied Margaret Meegan's testimony that she had never been able to reach him. According to Turner, he had spoken with her several times and had mistakenly told her that he had "goofed" up the case and that he would check the status and get back to her. He also stated that he was unable to find the relevant files.

The legal secretary in charge of the law office where Turner was employed testified that she was not familiar with the names of any of the three clients involved in this matter, nor was she aware of any phone calls by Margaret Meegan. She also testified that she had a high opinion of Turner's honesty and integrity. Robert Dion, a former client, personal friend of Turner's, and son of Irene Dion, testified that he had the highest regard for Turner.

Professor Lawrence F. Daly, one of Turner's law professors, was also associated with the firm. He testified that Turner's reputation in the legal profession was very good. Victor Cacciatore, an attorney in partnership with Turner, testified that Turner's reputation for honesty and integrity in the legal community was the very highest.

The hearing panel made the finding that Turner forged the signatures of the three clients to the check, commingled their funds by depositing it in his personal account and failed to reply to Margaret Meegan's calls. It further noted that the account was in overdraft status for several months after the deposit and held that Turner had converted the money. As to count II, the panel held that Turner's testimony before the Inquiry Board had been false and that his conduct was deceitful. It concluded that Turner's conduct as to both counts was unprofessional, unethical and tended to bring the legal profession into disrepute. The hearing panel recommended that he be suspended from the practice of law for 5 years.

The Review Board, after consideration of the record, concurred with the finding and conclusion of the Hearing Board that Turner's conduct was improper. It reduced the recommended period of suspension to 3 years on the grounds that it would be more consistent with the facts of the case.

The only real issue presented to this court is whether the facts justify a 3-year suspension from the practice of law.

The respondent basically admits the acts he is charged with, but argues that he does not remember the particular circumstances surrounding the check deposit. He contends that he had neither the intent to commingle and convert the funds, nor the intent to deceive the inquiry panel when he gave his mistaken testimony. Although he concedes that his conduct was improper, he appears to argue that his misconduct was not due to bad motives, but rather

through mistakes and bad judgment. He argues that a 3-year suspension is too harsh in view of his previous good record. We note that Turner was licensed to practice in January 1955 and that he has not been previously charged with misconduct. He has made restitution to the parties in this case. Several witnesses testified to his good reputation for honesty and integrity. On the other hand, we believe that his entire course of action indicates a callous disregard for his clients' interests and his professional responsibilities.

Three cases are helpful in establishing the appropriate discipline. In *In re Stillo* (1977), 68 Ill. 2d 49, an attorney received a check for settlement of his client's claim, signed the client's name to it and deposited it in his own bank account. Subsequent to settlement, he continued to tell the client that the case was still pending. In addressing the issue of commingling and conversion, this court stated:

> "For an attorney to settle a personal injury case and direct the cashing of settlement checks without authorization by his client is itself an impropriety requiring discipline. (*In re Agin* [1970], 45 Ill. 2d 126, 131.) When a lawyer, further, converts a client's funds to his own personal use he commits an act involving moral turpitude, and, in the absence of mitigating circumstances, such conversion is a gross violation of the attorney's oath, calling for the attorney's disbarment. (*In re Royal* [1963], 29 Ill. 2d 458, 464; *In re Ahern* [1962], 26 Ill. 2d 104, 110.) 'Other offenses might be excused, but conversion to his own use of the property of his client is an offense that cannot in any degree be countenanced.' (*People ex rel. Black v. Smith* [1919], 290 Ill. 241, 251.)" (68 Ill. 2d 49, 54.)

In *Stillo* the court explicitly stated that the misconduct of the attorney was aggravated by his subsequent dishonesty

when appearing before the Hearing Board. Stillo was disbarred.

*In re Fumo* (1961), 22 Ill. 2d 429, involved a similar commingling and conversion of funds. In that case the respondent was given checks for payment of taxes. The lawyer converted the money from an escrow account to his own personal use. As in the case before us, the attorney depleted his personal bank account, into which the money had been placed. Two thousand dollars were converted. Fumo was suspended for 2 years. However, one crucial distinction is clear between *In re Fumo* and the case at hand. In *Fumo* the court explicitly stated that the candor of respondent counsel in that action, considered with other factors, militated against disbarment. In the case we must decide today, the respondent displayed a shocking lack of candor and gave false answers to the Inquiry Board, both by letter and by testimony.

The circumstances of *In re Di Bella* (1974), 58 Ill. 2d 5, are also similar to those in the instant case. Di Bella obtained a settlement offer from an insurance company for $22,000. He signed the release and the subsequent draft with his client's name and converted the entire fund. When the conversion was discovered years later he paid his client the original $22,000 minus his one-fourth contingent fee. Di Bella received a 3-year suspension, the period recommended by the hearing panel and the board of managers of the Chicago Bar Association.

We view the respondent's conduct as less aggravated than that of the respondent in *Stillo* and conclude that the recommendation of the Review Board should be adopted. We therefore suspend the respondent from the practice of law for 3 years.

*Respondent suspended.*