NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

               Docket No. 81878--Agenda 10--November 1996.

           In re RICHARD ANTHONY RINELLA, Attorney, Respondent.

                    Opinion filed February 20, 1997.

                                    

        CHIEF JUSTICE HEIPLE delivered the opinion of the court:

     The Administrator of the Attorney Registration and

Disciplinary Commission filed a complaint with the Hearing Board

charging respondent, Richard Anthony Rinella, with four counts of

professional misconduct for engaging in sexual relations with

clients and testifying falsely before the Commission. The Hearing

Board found that respondent had committed the misconduct charged in

each of the counts and recommended that respondent be suspended

from the practice of law for a period of three years and until

further order of this court. The Review Board approved the findings

and recommendation of the Hearing Board, except that it recommended

that respondent's suspension expire automatically at the end of

three years. We granted respondent's petition for leave to file

exceptions. For the reasons that follow, we approve in part and

reject in part the recommendation of the Review Board, and approve

the recommendation of the Hearing Board. Respondent is suspended

from the practice of law for three years and until further order of

this court.

                      FACTUAL AND PROCEDURAL HISTORY

                        I. The Complaint and Answer

     Count I of the Administrator's complaint alleged that in July

of 1983 Jane Doe retained respondent to represent her in a

dissolution of marriage proceeding and paid respondent a fee of

$7,500. The complaint alleged that respondent and Doe had a sexual

relationship that began in approximately July of 1983 and continued

throughout the duration of respondent's representation of her. The

complaint alleged that the relationship was initiated by respondent

when he made sexual advances to Doe during her second visit to his

office, and that Doe submitted to respondent's advances because she

was afraid that refusing to do so would adversely affect

respondent's representation of her and because she could not afford

to hire another lawyer after paying respondent his retainer. The

complaint charged that by engaging in the conduct alleged in count

I, respondent had committed overreaching and violated Rules 1--

102(a)(5), 5--101(a), 5--102(a), and 5--107(a) of the Code of

Professional Responsibility (87 Ill. 2d Rs. 1--102(a)(5), 5--

101(a), 5--102(a), 5--107(a)) and Supreme Court Rule 771 (94 Ill.

2d R. 771).

     Count II of the complaint alleged that in March of 1991 and

March of 1993, while testifying under oath before the Commission,

respondent falsely stated that he had never had sexual relations

with Jane Doe, that he had not had sex with her at her house, and

that he had never had nude photographs taken of himself at her

house. Count II further alleged that in June of 1993, while again

testifying before the Commission, respondent retracted these

denials after he was shown a nude picture of himself which he

admitted was taken at Doe's house. Count II charged that

respondent's March 1991 and March 1993 testimony violated Rules

8.1(a)(1), 8.4(a)(3), 8.4(a)(4), and 8.4(a)(5) of the Rules of

Professional Conduct (134 Ill. 2d Rs. 8.1(a)(1), 8.4(a)(3), (a)(4),

(a)(5)) and Supreme Court Rule 771 (134 Ill. 2d R. 771).

     Count III of the complaint alleged that in November of 1983,

Jeanne Metzger retained respondent to represent her in a

dissolution of marriage proceeding and paid him a retainer of

$2,500. The complaint alleged that on Saturday, December 10, 1983,

respondent scheduled an appointment with Metzger at his office to

discuss her case, and that after Metzger arrived and entered his

office, respondent barred the door with a chair and initiated

sexual activity with her. The complaint alleged that Metzger

submitted to respondent's sexual advances because she believed that

the quality of respondent's representation of her would be

adversely affected if she refused. The complaint further alleged

that respondent engaged in sexual activity with Metzger on two

other occasions thereafter, including once on January 11, 1984, at

which time respondent asked Metzger to supply him with nude

pictures of her. The complaint also alleged that during a court

appearance on February 8, 1984, to which respondent had asked

Metzger to bring an instant camera, respondent instructed Metzger

to answer all of his questions relating to her divorce in the

affirmative, regardless of how she wished to respond. The complaint

charged that by engaging in the conduct alleged in count III,

respondent committed overreaching and violated Rules 1--102(a)(5),

5--101(a), 5--102(a), 5--107(a), and 7--101(a)(3) of the Code of

Professional Responsibility (87 Ill. 2d Rs. 1--102(a)(5), 5--

101(a), 5--102(a), 5--107(a), 7--101(a)(3)) and Supreme Court Rule

771 (94 Ill. 2d R. 771).

     Count IV alleged that Sandra Demos retained respondent's law

firm in 1980 to represent her in a dissolution of marriage

proceeding. The complaint alleged that although respondent did not

have primary responsibility for Demos' case, he would call her

frequently to ask her to meet him socially, and during these

telephone calls would discuss with her items of a personal nature

that he could only have learned from reviewing her file. The

complaint alleged that on one occasion around 1982, respondent made

sexual advances to Demos and engaged in sexual relations with her

in his automobile, after which he immediately took her to a motel

room where he attempted to have sexual intercourse with her. The

complaint further alleged that Demos submitted to respondent's

sexual advances because she believed that refusing to do so would

adversely affect his firm's representation of her. The complaint

charged that by engaging in the conduct alleged in count IV,

respondent committed overreaching and violated Rules 4--101(b)(3),

5--101(a), and 5--102(a) of the Code of Professional Responsibility

(87 Ill. 2d Rs. 4--101(b)(3), 5--101(a), 5--102(a)) and Supreme

Court Rule 771 (87 Ill. 2d R. 771).

     In his answer to the complaint, respondent denied the specific

instances of sexual encounters with Doe and denied having engaged

in any sexual relations with Metzger or Demos. As to the

allegations of perjury, respondent admitted that his testimony

before the Commission was untrue, but maintained that his answers

were justified because any sexual activity with Doe occurred after

his representation of her had ceased and was therefore not a proper

subject of the Commission's inquiry. Respondent also filed a motion

to dismiss the complaint based primarily on the ground that no

disciplinary rule specifically forbids sexual relations between an

attorney and his client. The Commission denied this motion and set

the matter for hearing.

                             II. The Evidence

     Before the Hearing Board, Jane Doe testified that during her

second visit to respondent's office in July 1983, respondent came

over to the sofa she was sitting on and began fondling her. She

testified that she began crying and that respondent told her to

stop crying. She testified that she then performed fellatio on

respondent. She also testified that during the sexual activity,

respondent said "it would make it easier." She testified that she

did not want to engage in sexual activity with respondent but felt

she had to because she had just changed lawyers and paid respondent

a large retainer.

     Doe further testified that one day in the spring of 1984, she

and respondent were undressed and engaging in fellatio in her

bedroom at her house when her ex-husband, John Doe, walked into the

room. Jane Doe testified that she put on a robe and followed John

Doe downstairs while respondent hid in a closet. She testified that

John Doe then asked where the couple's five-year-old son was, and

she responded that he was at a friend's house. She testified that

John Doe periodically refers to this incident when she requests

timely maintenance or child support payments from him.

     John Doe testified before the Hearing Board that the incident

in the bedroom at his wife's house occurred a few weeks before the

entry of a supplemental judgment resolved issues of property

distribution, maintenance, and child support in the Does'

dissolution of marriage proceeding.

     Also before the Hearing Board, Jane Doe identified two

exhibits as photographs of respondent in the nude taken at her

house in the spring of 1984. She said the photographs showed

wallpaper in her house which she had removed in the fall of 1984.

     Jane Doe admitted that she attended a holiday luncheon

sponsored by respondent's law firm in 1987 or 1988, and that she

sent respondent a humorous postcard in January 1986 which she

signed "Lustfully Yours."

     Respondent testified before the Hearing Board that while he

had engaged in sexual activity with Jane Doe, this activity took

place in late 1986, or in 1987 or 1988, after he had stopped

representing her. He denied having sex with Jane Doe in his office

in July 1983, and denied having sex with her in her house at any

time. He testified that he went to Jane Doe's house on a few

occasions during his representation of her, and that John Doe came

to the house on one of those occasions, but said that he and Jane

Doe were standing in an upstairs hallway fully clothed when John

Doe encountered them. Respondent also testified that the

photographs of him in the nude were taken on an occasion when he

and Jane Doe engaged in sexual activity in late 1986, or in 1987 or

1988. Respondent admitted that in prior testimony before the

Commission he falsely denied ever having had sex with Jane Doe and

having had nude pictures taken, but he stated that he believed

these answers were justified because his sexual relationship with

Doe occurred after he stopped representing her.

     Jeanne Metzger testified that she retained respondent in

November 1983, and that on a Saturday in December 1983, she had an

appointment at respondent's office to discuss her case. She

testified that when she entered respondent's office, respondent

closed the door behind her and propped a chair up against the

doorknob. She testified that respondent then came towards her,

unzipped his pants, and sat down on the couch beside her. She

testified that respondent then put his hand on her head, had her

lean towards him, and pushed her head down while stating "You don't

have to do this if you don't want to." Metzger testified that she

then performed fellatio on respondent. She testified that while she

did not want to do so, she felt she had to for the welfare of her

children, whose custody was contested.

     Metzger further testified that respondent scheduled another

appointment with her for December 14, 1983, at his office, and that

when she arrived, respondent told her to go downstairs and wait on

the sidewalk outside the building. She testified that respondent

then joined her outside and took her by taxi to an apartment in a

high-rise building. She testified that after entering the

apartment, respondent undressed and sniffed a bottle of liquid, and

then asked her to do the same. She testified that she sniffed the

bottle and got an "extreme high," and that the two then had sex.

Metzger further testified that on January 11, 1984, after a

deposition in her case, respondent again took her to the apartment

and asked her to sniff the bottle of liquid, and that the two then

had sex again. She testified that on this occasion, respondent told

her to make an appointment to get a "tummy tuck," and that he gave

her the name of the doctor with whom she should make the

appointment. She also testified that on this occasion, respondent

said that he wanted to take pictures of her "from the neck down"

and offered to let her take similar pictures of him, but that there

was no camera in the apartment.

     Metzger further testified that respondent told her to bring an

instant camera to a court appearance in her case one day in

February 1984. She testified that just before the court appearance,

respondent instructed her to answer "yes" to all of his questions.

She also testified that respondent asked her before the hearing if

she had brought the camera, and that she said "yes" because she was

afraid telling him the truth would affect his representation that

day. She testified that immediately after the court appearance,

when she told respondent that she did not really have the camera,

he became angry and left abruptly, refusing to discuss with her a

number of questions she had regarding the testimony she had given

that day. Metzger testified that shortly thereafter, she hired

another attorney to replace respondent.

     Respondent testified that he never had sexual relations with

Metzger. He denied propping a chair up against the door during an

appointment with Metzger. He denied ever going with her to an

apartment and having sex. He also denied asking her to bring a

camera to a court appearance.

     Sandra Demos testified before the Hearing Board that she

retained respondent's law firm in 1980 to represent her in a

dissolution of marriage proceeding, and that respondent's father

was the primary attorney on her case. Demos testified that she met

respondent for the first time in the lobby of the law firm, and

that after this meeting, he began calling her frequently to ask her

out for a drink. She stated that although she continually refused

to meet him, the phone calls went on for months, and that during

the conversations, respondent discussed information he could only

have learned by viewing her confidential files, such as her sexual

history with her husband.

     Demos testified that she finally agreed to meet respondent one

day in March 1992. She testified that they met and had several

drinks, and that respondent afterwards offered to drive her home.

She testified that respondent then drove her to a harbor, parked

the car, and began kissing and fondling her. She testified that she

did not want to have sexual relations with him, but submitted to

his advances because she feared her case would be mishandled if she

did not. She further testified that after approximately 15 minutes,

respondent, without saying anything to her, drove the car to a

motel and took her into a room. She testified that respondent

attempted to have sexual intercourse with her, but had trouble

maintaining an erection, and that he then began sniffing some

liquid in a bottle. She testified that respondent then attempted to

force her to perform fellatio on him, but that she refused. She

testified that after they had spent approximately one hour in the

motel, respondent drove her home.

     Respondent testified that he did not recall ever meeting

Demos, although he might have met her once briefly in the lobby of

his law firm. He denied ever discussing Demos' case with other

attorneys at his firm or viewing the firm's files on her case. He

also denied that he ever had sexual relations with her or took her

to a motel.

                     III. Findings and Recommendations

     The Hearing Board found that respondent engaged in sexual

relations with each of the three women while he or his firm

represented them. The Board found that this conduct by respondent

constituted overreaching because he used his position of influence

over the clients to pressure them to engage in sexual relations.

The Board noted that all of the women testified that they did not

want to engage in sexual relations with respondent but felt that

they had to in order to ensure that they were effectively

represented and because they could not afford to hire another

lawyer.

     The Hearing Board also found that respondent violated the

following rules of the Code of Professional Responsibility: Rule 1-

-102(a)(5), by engaging in conduct prejudicial to the

administration of justice (87 Ill. 2d R. 1--102(a)(5)); Rule 4--

101(b)(3), by using client confidences for his own advantage in his

dealings with Sandra Demos (87 Ill. 2d R. 4--101(b)(3)); Rule 5--

101(a), by failing to withdraw from the women's cases when his

professional judgment may have been affected by his own personal

interest (87 Ill. 2d R. 5--101(a)); and Rule 5--107(a), by failing

to represent his clients with undivided fidelity (87 Ill. 2d R. 5--

107(a)). As to count II, the Board found that respondent violated

Rules 8.1(a)(1), 8.4(a)(3), 8.4(a)(4), and 8.4(a)(5) of the Rules

of Professional Conduct by giving false testimony before the

Commission. 134 Ill. 2d Rs. 8.1(a)(1), 8.4(a)(3), (a)(4), (a)(5).

Finally, the Board found that respondent violated Supreme Court

Rule 771 by engaging in conduct which tends to defeat the

administration of justice or bring the courts or the legal

profession into disrepute. 134 Ill. 2d R. 771.

     The Board found that the Administrator did not prove that

respondent violated Rule 5--102(a) by failing to withdraw from

employment when it was obvious that he might be called as a witness

other than on behalf of his clients, or Rule 7--101(a)(3) by

intentionally prejudicing or damaging his clients during his

representation of them. 87 Ill. 2d Rs. 5--102(a), 7--101(a)(3).

     The Hearing Board recommended that respondent be suspended

from the practice of law for a period of three years and until

further order of this court. The Review Board approved each of the

findings and the recommendation of the Hearing Board, except that

it recommended that respondent's suspension expire automatically at

the end of three years.

                                 ANALYSIS

               I. Respondent's Sexual Relations with Clients

     Respondent takes exception to the Hearing Board's finding that

he committed sanctionable misconduct. He contends that he cannot be

sanctioned for engaging in sexual relations with his clients

because no disciplinary rule specifically proscribes such conduct,

and that imposing a sanction under these circumstances would

violate due process because he did not have adequate notice that

his conduct was prohibited. He also asserts that his conduct did

not violate the specific rules cited by the Board and did not

constitute overreaching.

     Initially, we reject respondent's contention that attorney

misconduct is sanctionable only when it is specifically proscribed

by a disciplinary rule. On the contrary, the standards of

professional conduct enunciated by this court are not a manual

designed to instruct attorneys what to do in every conceivable

situation. In re Gerard, 132 Ill. 2d 507, 538 (1989). As stated in

the preamble to the Illinois Rules of Professional Conduct:

          "Violation of these rules is grounds for discipline. No

          set of prohibitions, however, can adequately articulate

          the positive values or goals sought to be advanced by

          those prohibitions. This preamble therefore seeks to

          articulate those values ***. Lawyers seeking to conform

          their conduct to the requirements of these rules should

          look to the values described in this preamble for

          guidance in interpreting the difficult issues which may

          arise under the rules." 134 Ill. 2d Illinois Rules of

          Professional Conduct, Preamble, at 470.

The preamble then likens the practice of law to a public trust, and

charges lawyers with maintaining public confidence in the system of

justice by acting competently and with loyalty to the best

interests of their clients. 134 Ill. 2d Illinois Rules of

Professional Conduct, Preamble, at 470.

     In support of his contention that only specifically proscribed

conduct is sanctionable, respondent relies on In re Corboy, 124

Ill. 2d 29 (1988). In that case, this court refused to impose

sanctions on certain attorneys who made gifts to a judge because

the attorneys could not reasonably have been on notice that their

conduct was prohibited and because there was considerable belief

among members of the bar that the attorneys had acted properly. In

re Corboy, 124 Ill. 2d at 45. In contrast, we do not believe that

respondent, or any other member of the bar, could reasonably have

considered the conduct involved here to be acceptable behavior

under the rules governing the legal profession.

     The Hearing Board found that respondent failed to withdraw

from representation when the exercise of his professional judgment

on behalf of his clients reasonably could have been affected by his

own personal interests, thereby violating Rule 5--101(a) of the

Code of Professional Responsibility. 87 Ill. 2d R. 5--101(a). The

Hearing Board also found that respondent failed to represent his

client with undivided fidelity, thereby violating Rule 5--107(a).

87 Ill. 2d R. 5--107(a). We believe the record amply supports these

findings. The Hearing Board was justified in concluding that

respondent took advantage of his superior position as the women's

legal representative to gain sexual favors from them during times

when they were most dependent upon him. Each of the women testified

that she did not want to engage in sexual relations with

respondent, but felt she needed to submit to his advances in order

to ensure the vigorous representation of her interests. By placing

his clients in such situations of duress, respondent compromised

the exercise of his professional judgment on their behalf and

failed to represent them with undivided fidelity. Furthermore, with

regard to Sandra Demos, the record supports the Hearing Board's

finding that respondent used a confidence or secret of a client for

his own advantage in violation of Rule 4--101(b)(3). 87 Ill. 2d R.

4--101(b)(3).

     We also believe the record supports the Hearing Board's

finding that respondent engaged in conduct prejudicial to the

administration of justice, thereby violating Rule 1--102(a)(5). 87

Ill. 2d R. 1--102(a)(5). Two of the women described incidents in

which respondent, during appointments he had scheduled with them in

his office to discuss their cases, made completely unsolicited

sexual advances which included undressing himself. Respondent's

sexual relations with all three clients originated solely from the

provision of legal services, since he did not know the women prior

to their retaining him or his firm. These abuses of respondent's

professional relationship with clients were clearly prejudicial to

the administration of justice.

     Respondent's conduct is also sanctionable as overreaching. An

attorney commits overreaching when he takes undue advantage of the

position of influence he holds vis-a-vis a client. In re Stillo, 68

Ill. 2d 49, 53 (1977). By making lewd and unsolicited sexual

advances to his clients during appointments purportedly scheduled

to discuss their cases, and by causing the clients to believe that

their interests would be harmed if they refused his advances,

respondent took undue advantage of his position and thereby

committed overreaching.

     We further believe the Hearing Board was justified in finding

that respondent's misconduct violated Supreme Court Rule 771 by

tending to defeat the administration of justice or to bring the

courts or the legal profession into disrepute. 94 Ill. 2d R. 771.

     Respondent contends that his alleged sexual misconduct should

not be subject to sanction because there is no evidence that it

adversely affected his or his firm's representation of the women.

In this regard, we note that Jeanne Metzger testified that

respondent refused to consult with her after a court appearance

because he was angry that she had not brought a camera with her to

take nude pictures. Even absent such evidence of actual harm,

however, respondent's sexual conduct would still be sanctionable

because it posed a significant risk of damaging the clients'

interests. See In re Lewis, 118 Ill. 2d 357, 362-63 (1987).

     Respondent also challenges the sufficiency of the evidence

that he engaged in the sexual activity alleged in the complaint.

Factual findings of the Hearing Board are entitled to great

deference, given the Board's superior capabilities as a trier of

fact, and will not be disturbed unless they are against the

manifest weight of the evidence. In re Timpone, 157 Ill. 2d 178,

196 (1993). Considering all of the testimony in this case, we

cannot say that the Hearing Board's findings are manifestly

erroneous.

     For the above reasons, we approve the Hearing Board's findings

of fact and conclusions of law regarding respondent's sexual

misconduct with the former clients.

          II. Respondent's Prior Testimony Before the Commission

     Respondent contends that his admittedly false testimony before

the Commission is not sanctionable because the questions posed to

him were ambiguous, because information concerning his private

sexual relations was protected by the right of privacy, and because

he later recanted his false testimony. We find no merit in any of

these contentions. Respondent was clearly asked if he had ever had

sexual relations with Jane Doe, to which he falsely responded "no."

Furthermore, to the extent that respondent's sexual conduct

constituted an abuse of his professional position, that conduct

took on a public concern. Finally, we observe that respondent did

not voluntarily recant his false testimony, but rather recanted

only when confronted with undeniable pictorial evidence that he had

lied to the Commission. Under these circumstances, his false

testimony is entirely inexcusable. We therefore approve the Hearing

Board's findings that respondent violated Rules 8.1(a)(1),

8.4(a)(3), 8.4(a)(4), and 8.4(a)(5) of the Rules of Professional

Conduct and Supreme Court Rule 771. 134 Ill. 2d Rs. 8.1(a)(1),

8.4(a)(3), (a)(4), (a)(5), 771.

                  III. Propriety of Recommended Sanction

     Respondent contends that the three-year suspension recommended

by the Hearing and Review Boards is an excessive sanction for the

instant misconduct. In deciding on an appropriate sentence, the

Hearing Board considered the following factors in aggravation:

respondent's pattern of misconduct, his selfish motive, the

nonconsensual nature of his sexual relations with the women, his

inability to appreciate the wrongfulness of his conduct, and his

false testimony before the Commission. In mitigation, the Board

considered that this is respondent's first charged instance of

misconduct, as well as the testimony of numerous witnesses

regarding respondent's good character and reputation in the legal

community.

     We do not believe that the recommended three-year suspension

is an excessive sanction. Respondent violated numerous ethical

standards in his dealings with three separate clients. He then

compounded this misconduct by concealing and denying it while it

was under investigation. Moreover, we believe that the seriousness

of the violations in this case warrants imposition of the

suspension until further order of this court, as recommended by the

Hearing Board.

     Accordingly, we approve in part and reject in part the

recommendation of the Review Board, and approve the recommendation

of the Hearing Board. Respondent is suspended from the practice of

law for three years and until further order of this court.

                                                      Respondent suspended.

     JUSTICES BILANDIC and McMORROW took no part in the

consideration or decision of this case.

     JUSTICE FREEMAN, concurring in part and dissenting in part:

     The majority finds that respondent has, by his conduct,

violated several rules under our Code of Professional

Responsibility. Therefore, the majority has suspended respondent

from the practice of law for a period of three years and until

further order of the court. I agree that respondent's conduct

warrants sanction, and given the nature and seriousness of that

conduct, suspension from the practice of law is appropriate.

However, because I fail to see how either the public is further

protected or the integrity of the legal profession is further

safeguarded by the "until further order" portion of the sanction,

I disagree to that extent.

     That said, I find it apt to comment on an additional aspect of

this case. The respondent has urged that because the Code offers no

explicit guidance on the issue of sexual relationships between an

attorney and client, his conduct should not subject him to

discipline. I agree with the majority that the absence of an

explicit rule concerning sexual relationships in the context of the

attorney-client relationship is not a reason to excuse respondent's

conduct. No rule need have existed to inform respondent that his

conduct, which was so obviously improper, was violative of the

rules of professional conduct.

     Respondent's misconduct consisted of more than a single

isolated incident involving one client. Furthermore, this was

conduct which went beyond the mere verbalization of sexual desire.

At various times during the course of respondent's or his firm's

representation, the respondent repeatedly engaged in uninvited

physical sexual conduct with three different clients. In each of

the three cases, respondent's sexual advances were both unsolicited

and unwelcome. Further, these sexual episodes lasted no longer than

did the period of the legal representation. These facts not only

evidence the gratuitous nature of the conduct, but also support the

complainants' characterization of respondent's advances as

coercive.

     Therefore, had the circumstances of this case been different,

the absence of an express rule might be reason either to excuse the

conduct or certainly to impose a lesser sanction. However, this

conduct far exceeds any innocent mistake in professional judgment

which, in the absence of an express proscription, would merit such

leniency. 

     As a practical matter, there could never be a set of rules

which contemplates every aspect of the many encounters between an

attorney and client. Furthermore, and as the majority so aptly

points out, implicit in the Code is that every attorney, in the

exercise of professional judgment, will conduct him or herself in

a manner which will not potentially compromise the attorney-client

relationship. Given that, some may disagree that there need be any

rule which expressly governs sexual relations between an attorney

and client. Yet, few could disagree that a per se rule prohibiting

sexual relations between an attorney and client during the course

of the legal representation would provide the clearest guidance to

practitioners in this regard. Incidentally, our rules committee is

on the threshold of fashioning a rule to address this very issue.

     Returning to the "until further order" portion of the

sanction, I again note my disagreement. Typically, the "until

further order" sanction has been reserved for those cases where the

attorney has been the subject of repeated disciplinary proceedings

(see, e.g., In re Levin, 101 Ill. 2d 535 (1984) (respondent

involved in repeated incidents of misconduct and prior discipline))

or where a condition which renders an attorney not fit to practice

is amenable to treatment and change (see, e.g., In re Guilford, 115

Ill. 2d 495 (1987) (until further order sanctions have been ordered

in cases in which attorneys suffered mental illness or some form of

addiction)). In such cases the disciplined attorney is afforded an

opportunity to establish that the conduct or the condition which

required suspension has actually improved or changed.

Correspondingly, the court has an opportunity to assess the

attorney's rehabilitation and readiness to return to the practice

of law.

     Respondent's conduct, which was largely confined to sexual

relations with clients during the course of his or his firm's

representation of them, is not conduct which is amenable to

assessment of change. There are no allegations of sexual misconduct

occurring outside of the attorney-client relationship. Therefore,

for purposes of reinstatement, it is not apparent how respondent

will demonstrate, in any meaningful way, and how this court will be

able to assess, with much reliability, whether respondent has truly

mended his ways. Further, respondent has not been subject to either

prior or repeated disciplinary proceedings which would, for those

reasons, warrant tightening the reins on his ability to re-enter

the practice.

     Finally I have become aware that, in practice, when an "until

further order" sanction has been imposed, the process for

reinstatement, which is conducted through our Attorney Registration

and Disciplinary Commission, may take well up to two years. In such

cases, the "until further order" sanction operates to enhance the

sanction by extending the suspension period. Absent the necessary

showing that a suspended attorney's suspension should continue, any

extension of that suspension, even an unintentional one, is simply

unfair to the practitioner.

     As a means of assessing fitness to practice law, the "until

further order" sanction is invaluable. However, to the extent that

the sanctionable conduct at issue is not amenable to measurement

for improvement, imposition of an "until further order" sanction

serves no valid purpose. This sanction should be reserved only for

those cases where it will function most effectively as an

assessment tool. This court, as overseers of the practice of law in

Illinois, must take care to insure that the very sanction by which

we assess the need for continued suspension from the practice of

law does not, merely by its imposition, effect a baseless

continuation of the suspension.

     My disagreement with the "until further order" sanction in

this case has more to do with the general operation of the sanction

itself than with the fact that it was imposed on this particular

respondent. Clearly, respondent's misconduct was sanctionable.

However, because of the nature of this respondent's misconduct, the

"until further order" sanction will be ineffective to assess, with

much reliability, his fitness to return to the practice of law.

     Therefore, I respectfully dissent from this portion of the

court's judgment.