(No. 49670.

*In re* SHERWIN I. LEVINSON, Attorney,
Respondent.

*Opinion filed May 16, 1978.*

KLUCZYNSKI, J., took no part.

Mary M. Conrad, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Sherwin I. Levinson, of Chicago, *pro se.*

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This disciplinary proceeding comes before us on exceptions to the report and recommendation of the Review Board of the Attorney Registration and Disciplinary Commission which approved the Hearing Board finding that Sherwin I. Levinson (respondent) should be disbarred. That recommendation resulted from a complaint filed by the Administrator against respondent pursuant to the provisions of our disciplinary rules (58 Ill. 2d R. 751 *et seq.*; 65 Ill. 2d R. 753 *et seq.*). Count I of that complaint related to respondent's misconduct in connection with the handling of an adoption in which Mr. and Mrs. William Soto retained respondent to represent them in the adoption of Mr. Soto's son. Count II related to respondent's failure to register and pay to the Commission the annual attorney's registration fee required by Rule 756.

In November 1973 the Sotos retained respondent pursuant to an agreement that he would be paid $275 for handling the legal proceedings concerning the adoption. One hundred dollars of the fee was paid February 11, 1974, $50 on March 15, and $50 on April 1. The $75 balance was payable 3 days before the court hearing. A petition for adoption was filed by respondent on March 8;

he apparently arranged for publication of notice and did arrange an appointment for the Sotos to be interviewed on June 20 by Rose Cantwell, a caseworker for the Cook County Department of Supportive Services. That appointment was kept by the Sotos, but no further action was ever taken by respondent to complete the adoption proceedings.

Mrs. Soto testified that when she heard nothing further from respondent, she started calling his office every other day, leaving messages with his answering service. She continued this for about two weeks, but her calls were never returned. She complained to the answering service and was informed that her messages were given to respondent, which was all that could be done. Sometimes Mrs. Soto called twice per day. In early August she received a letter from Mrs. Cantwell asking her to call. She did so and was told that Mrs. Cantwell had been trying, unsuccessfully, to reach respondent, who did not return her calls or acknowledge her messages. Apparently Mrs. Soto was told by Mrs. Cantwell during this call that a $25 fee and an interim court order were necessary before a visiting caseworker could complete her investigation and report to the court. Mrs. Soto continued her efforts, and finally respondent himself answered the telephone on January 13, 1975. Mr. Soto's father and brother accompanied the Sotos to respondent's office that same day. Respondent at first denied ever receiving any prior messages and then told them Mrs. Cantwell was "holding up everything." Mrs. Soto testified that, when asked about the $25 fee and interim order, respondent maintained he had sent the fee and secured the order. Actually, he had done neither. Mrs. Soto stated that respondent promised to call them the following Monday. He did not. A February 24 letter to them said respondent had hurt his leg, would be out of town, but would "set this matter up and advise you" at "the end of the week or on Monday."

The Sotos heard nothing until a letter dated March 4 told them respondent had requested instructions from Mrs. Cantwell and "will complete and advise you. I would imagine in the next few days." Hearing nothing within the following week, they again commenced calling respondent, leaving telephone numbers and messages. The calls were not returned. Mrs. Soto complained to the Commission following her April 5 call to respondent's office in which, she testified, respondent answered the telephone, telling her, however, that he was respondent's associate and that respondent would be in at 1 p.m. She called then and was told respondent was not in. Thereafter she left a message with the answering service indicating the Sotos no longer wanted respondent as their lawyer and requesting the return of their papers and money. Several days later they received their papers but not the money. The adoption proceeding was subsequently completed in 1976 by staff members of a legal assistance agency.

Rose Cantwell testified that she repeatedly and unsuccessfully attempted to communicate with respondent by telephone and mail following the initial interview with the Sotos; that she had no authority to refer the matter to a visiting caseworker until she received a "turnover order" from the court and the fee had been paid or waived (which it eventually was); that the court was informed of respondent's lack of cooperation; that respondent did call once in September 1974 and wrote a letter and called in March 1975, but that he did not answer when the calls were returned nor did he secure the order requested in the many messages left with his answering service both before and after the March letter.

We agree that respondent's conduct violated Canons 1, 6 and 7 (Disciplinary Rule 1—102(A)(4), Disciplinary Rule 6—101(A)(3), and Disciplinary Rule 7—101(A)(2)) of the Illinois Code of Professional Responsibility approved by the Board of Governors of the Illinois State Bar Associa-

tion, as revised December 1977, and our Rule 756. Respondent not only failed to perform his contract with the Sotos even though he had been paid all fees then owing him, but he also failed to respond to their attempts to communicate with him. When they did succeed, in January 1975, in conferring with him, he misrepresented to them the facts regarding the cause for the delay in completing the adoption, and thereafter failed to make good his assurances of forthcoming action.

Perhaps even more astonishing, under normal circumstances, would be the lack of concern manifested by respondent with regard to these proceedings. Despite personal service upon him of a copy of the complaint and notice of hearing, respondent filed no answer, and neither he nor anyone on his behalf appeared before the Hearing Board or the Review Board. Only after our May 25 order approving the report of the Review Board and disbarring respondent did he appear in this court. On June 13 respondent moved to reconsider that order and for leave to file exceptions to the report of the Review Board. That motion was allowed and an order entered by us requiring exceptions to be filed by July 1 and respondent's brief by July 26. The exceptions were filed, but the brief was not. On November 4 the Administrator again moved to confirm the Review Board report and reissue the disbarment mandate. Respondent objected, and on November 16 this court ordered respondent to file his brief within 30 days. That order provided the disbarment order should issue if the brief was not filed within the specified time. A brief was filed.

The several documents filed by respondent allude to the serious illness and death of his son as factors mitigating what we would normally regard as most extraordinary conduct. While we are not insensitive to respondent's loss and appreciate the grievous and traumatic nature of the

period embracing the illness and death of his son, the difficulty is that respondent has presented no facts or evidence whatsoever to any of the disciplinary bodies hearing this case. The documents filed in this court contain rather vague references to agents of the Commission being informed by him of the son's illness and advising respondent "that under said circumstances all would be considered and the Commission would act in such a manner as to allow to respond and/or act when this personal problem was concluded." His objections assert "C. That the respondent was in constant hospital attendance during this period and in fact taking instruction on how to operate medical apparatus in order to help with son's care and sustain his life." Respondent's motion to reconsider our original disbarment order also alleged:

> "2. That the son of the said Sherwin I. Levinson did pass away on April 18, 1977 after an illness of quite a period of time and a hospitalization of over six months, during which time Sherwin I. Levinson was in almost constant attendance and did so advise the commission's representative.
>
> \*\*\*
>
> 4. That I did and do have a meritorious response to this matter, but as I so advised the commission, my son's health was paramount and was led to believe they understood."

The Administrator's reply to respondent's motion to reconsider our earlier disbarment order states the facts as to hospitalization differently. Insofar as here relevant, they are as follows:

> "1. The complaint and notice of hearing in this case was served on the respondent at his office on May 13, 1976. The respondent's son was hospitalized at that time and was discharged on May 29, 1976.
>
> 2. The hearing in this case was held July 8, 1976, and the respondent did not appear. The Hearing Board attempted to call the respondent but he could not be reached and the hearing proceeded.

3. On August 2, 1976, the respondent wrote to the Administrator's office in response to another complaint against him (76—CI—788), but made no inquiry relating to the above-entitled case.

4. The respondent's son was again hospitalized from November 1, 1976 to December 9, 1976.

\* \* \*

8. The respondent's son died April 18, 1977."

If respondent's son's condition was one requiring constant attention, it might well be at least a partial explanation for what would otherwise appear to be an unusual lack of concern regarding the disciplinary proceedings. To assume this to have been true, however, would be little better than sheer speculation on the record before us. Similarly, there is in that record no suggestion that the son's illness existed during the 1973-75 period involving the Sotos. Nor does it seem to us that the circumstances here, distressing as they undoubtedly were, justify respondent's inattention to these proceedings in recent months, nor his prolonged failure, which so far as we are informed persists to this day, to pay his annual registration fee. While the possibility cannot be denied that respondent may have undergone severe or disabling emotional disturbance following the death of his son, the responsibility rests with respondent to establish that fact or any others mitigating what appear to us as serious misconduct with the Sotos and an unusual absence of concern for the later proceedings before this court.

As we have frequently indicated, the principal purposes of disciplinary proceedings are protecting the public, safeguarding the administration of justice, and maintaining the integrity of the profession. (*In re Leonard* (1976), 64 Ill. 2d 398, 406.) In our judgment, respondent's continued practice of law is not compatible with the implementation of those standards. The amount of money paid respondent by the Sotos was not insubstantial, and they were subsequently compelled to seek assistance from a United

Charities of Chicago legal clinic in completing the adoption. Failure to pay an annual registration fee resulting solely from mistake or oversight would not arouse concern. But it is what seems to be an irresponsible course of conduct which troubles us and is persuasive of the necessity for substantial discipline in order that the public may be protected from the effects of that irresponsibility. While we are not insensitive to the family problems faced by respondent in 1976, we believe that future clients should not be exposed to the possibility of treatment such as the Sotos received until there appears greater reason than now exists to expect respondent's adherence to normal professional standards.

Respondent is accordingly suspended from the practice of law for a period of 6 months and until the further order of the court.

*Respondent suspended.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.