(No. 63590.— )

*In re* RUSSELL VERNON GUILFORD, Attorney,
Respondent.

*Opinion filed February 20, 1987.—Rehearing
denied March 30, 1987.*

MILLER, J., specially concurring.
MORAN, J., dissenting.

Samuel J. Manella, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for respondent.

CHIEF JUSTICE CLARK delivered the opinion of the court:

The respondent, Russell Vernon Guilford, was admitted to the practice of law in Illinois in 1959. In October of 1984, the Administrator of the Attorney Registration and Disciplinary Commission filed a four-count complaint against the respondent. Counts I and II charged the respondent with the neglect of a legal matter entrusted to him by a client, Richard Brandon, with making misrepresentations to Brandon, and with making false statements to the Administrator with the intent to obstruct the disciplinary investigation. Counts III and IV charged the respondent with the neglect of a legal matter entrusted to him by another client, with making misrepresentations to that client, and with making false statements to the Administrator with the intent of obstructing the dis-

ciplinary investigation.

The Hearing Board found the respondent guilty of counts I and II, dismissed counts III and IV for insufficient evidence, and recommended that the respondent be suspended from the practice of law for a period of three years and until further order of this court. The Review Board, after affirming the findings of the Hearing Board, recommended that the respondent be suspended for two years. Both the respondent and the Administrator filed exceptions to the recommendation of the Review Board. No issue is raised in this court regarding the dismissal of counts III and IV of the complaint.

The record shows that on July 20, 1981, Richard Brandon met with the respondent regarding a back injury that he had suffered while at work on or about March 26, 1980. Brandon was referred to the respondent by another attorney, James Adducci. At their initial meeting, Brandon retained the respondent to file a workers' compensation claim against his employer and pursue any other available remedies. The attorney-client agreement provided that the respondent would be remunerated by a contingency fee and named the respondent and Adducci as the retained attorneys. During the time period with which we are concerned, the respondent was an individual practitioner who accepted similar referrals of personal injury and workers' compensation cases from other attorneys.

At the respondent's suggestion, in August 1981, Brandon was hospitalized for a myelogram and other diagnostic tests. At that time, Brandon was informed that he might have multiple sclerosis. Shortly thereafter, Brandon went to the hospital to have a CAT scan taken. The CAT scan revealed that he had three herniated discs in his lumbar area. Brandon went to the hospital a third time in December 1981, to have another myelogram taken. The record does not indicate whether Brandon's

subsequent hospital visits confirmed or ruled out the possibility that Brandon suffered from multiple sclerosis.

During the late summer and the fall of 1981, Brandon had several telephone conversations with the respondent in which he inquired as to the status of his case. Brandon testified that the respondent assured him that "it was on file" and that "it would be coming up." Brandon testified that he also asked the respondent whether a diagnosis of multiple sclerosis would affect his claims, and that the respondent's answer was that it would have no bearing on his case.

In early 1982, Brandon's union informed him that it would pay the bills for his first hospital visit but would not pay the bills for his subsequent hospital visits until it received a workers' compensation case file number. Brandon telephoned the respondent numerous times during the spring and summer of 1982, asking for the case file number and inquiring as to its status. The respondent did not give the number to Brandon. On May 20, 1982, Brandon sent a letter to the respondent again requesting the number.

In late summer of 1982, after receiving no response to his letter, Brandon met with the respondent at respondent's law office. The respondent still did not give the case file number to Brandon, but he said that he would call and give the number to Brandon's union. The respondent told the union that the workers' compensation case file number for Brandon's case was "80 WC 22682." Brandon testified that at no time did the respondent ever tell him that he was not pursuing his claims. Sometime later in 1982, Brandon was advised by another attorney that the respondent had not filed a case on Brandon's behalf. Brandon contacted the Illinois Industrial Commission and was informed that file number 80 WC 22682 identified the case of Frank Guida v. Flying Tiger Airlines, which in no way involved Brandon.

On September 26, 1983, Brandon filed a charge against the respondent with the Attorney Registration and Disciplinary Commission. At the outset of the investigation, a copy of Brandon's charge was sent to the respondent for his response. In a letter to the Commission dated December 5, 1983, the respondent stated that it was his opinion that Brandon's medical condition was due to multiple sclerosis and not a work-related injury. The respondent further claimed in the letter that in September 1981 he had told this to Brandon and informed Brandon that he would take no further action regarding his claims.

Contrary to the respondent's assertion in the December 5 letter to the Commission that he had told Brandon in September 1981 that he would no longer represent him, the respondent testified before the Hearing Board that he did not remember specifically when the conversation occurred, but that the conversation took place shortly after he received a doctor's report dated October 5, 1981. Although the respondent stated that he no longer considered Brandon his client, he conceded that he may have had as many as 10 telephone conversations with Brandon from the fall of 1981 through 1982. The respondent testified that the calls concerned Brandon's separation from his wife, threats that Brandon was allegedly receiving, and the payment of Brandon's medical bills. He admitted that Brandon had repeatedly asked him for the workers' compensation case file number but could not recall ever receiving a letter from Brandon requesting the number. The respondent testified that he gave Brandon the false case file number, which had been assigned to a wholly unrelated workers' compensation claim he had filed for another client. The respondent's testimony conflicted with Brandon's testimony that respondent had given the false case file number to the union rather than to Brandon personally. The respondent

further testified that he gave Brandon the number "just to get rid of him."

The respondent never filed a workers' compensation claim or a personal injury action on Brandon's behalf. At the time Brandon became aware of this fact, in mid or late 1982, the two-year statute of limitations had lapsed for any personal injury action that he might have had as a result of his injury, though a workers' compensation claim could still have been brought within the three-year statute of limitations.

Five character witnesses testified on the respondent's behalf. The witnesses, including three attorneys familiar with the respondent's practice and two judges of the circuit court of Cook County before whom respondent had frequently practiced, testified that the respondent was competent, diligent, and honest.

As one of the respondent's character witnesses, the respondent's counsel at the hearing testified that he had knowledge of the details of the respondent's two prior instances of misconduct resulting in discipline, which are discussed later in this opinion. Of the other two attorneys who were called as character witnesses, one was aware of the respondent's two prior instances of misconduct resulting in discipline, while the other was only vaguely aware of the earlier misconduct. In addition, only one of the attorneys, the attorney who knew only vaguely of the respondent's prior misconduct, had more than a vague or general knowledge of the charges pending against the respondent. One judge was unaware of the respondent's prior misconduct; the other judge testified that he learned of the respondent's prior misconduct only earlier that day. Both judges had only a vague knowledge of the charges pending against the respondent.

The respondent initially contends that the Administrator failed to establish by clear and convincing evi-

dence that he neglected the legal matter entrusted to him by Brandon and made misrepresentations to Brandon and the Commission with regard to his handling of the matter. The respondent's contention rests on his defense raised at the hearing, that the respondent allegedly advised Brandon that his medical condition was due to multiple sclerosis and not a traumatic injury, and that the respondent allegedly informed Brandon that he would no longer represent him. We find that the Hearing Board and the Review Board correctly rejected the respondent's defense as incredible in view of the clear and convincing evidence adduced at the hearing.

The respondent's claim, that he told Brandon in September or October 1981 that he would do nothing further on his behalf, is inconsistent with his actions and conduct as well as Brandon's. If the respondent had truly believed that Brandon's injury was not work-related, and had in fact severed the attorney-client relationship as he asserts, there would have been no reason for the respondent to knowingly give Brandon the false workers' compensation case file number and deceive Brandon into believing that his claim was on file and that his interests were being protected. Respondent's claim that he gave Brandon the spurious case file number to stop Brandon's repeated calls is equally incredible. It is hard to believe that Brandon would have persisted, as he did, through the summer of 1982 in his request for the case file number and information about the status of the case had the respondent in fact informed Brandon in September or October 1981 that he would no longer represent Brandon and that Brandon was free to consult with, and retain, another attorney.

Moreover, the record reveals that at no time did the respondent ever inform the referring attorney, James Adducci, of his alleged opinion regarding Brandon's medical condition and intention not to further pursue his

client's claims, matters certainly of no small import to a referring attorney. Nor did the respondent ever document his bare assertion, that he would no longer represent Brandon, in a letter to Brandon advising him to that effect. In fact, there is simply no evidence, beyond the respondent's uncorroborated testimony, that he ever told Brandon that he would no longer represent him. It is inconceivable that the respondent would not have sent even the most perfunctory of letters so advising Brandon, especially in light of the respondent's testimony that he was being vexed by calls concerning a case he allegedly had refused to handle. Further, the respondent testified that it was his practice in the ordinary course of business to discard closed case files one year after their closing. Yet, in late 1983 when the disciplinary investigation was initiated, the respondent was unexplainably still in possession of at least a portion of the file on Brandon's matter, over two years after he had allegedly ceased his representation of Brandon. In sum, we conclude that the finding of the Hearing Board and the Review Board, that the respondent neglected a matter entrusted to him by Brandon and misrepresented to Brandon and the Commission the facts of his handling of the matter, is supported by clear and convincing evidence.

We consider next the appropriate sanction for the respondent's misconduct. While uniformity in attorney discipline is desirable (*In re Andros* (1976), 64 Ill. 2d 419, 425-26), each case presents a unique factual situation and must therefore be carefully evaluated on its own merits. (*In re Hopper* (1981), 85 Ill. 2d 318, 324.) Prior disciplinary action against an attorney is properly considered in determining the extent and nature of discipline for subsequent misconduct. *In re Broverman* (1968), 40 Ill. 2d 302, 307.

In 1978, the respondent was suspended from the

practice of law for six months for neglecting the affairs of two different clients. (In re Guilford (1978), M.R. 2145.) One instance of neglect involved the respondent's failure to finalize an adoption. The other instance involved the respondent's failure to conclude the administration of a decedent's estate, causing the estate to be assessed penalties for the delinquent filing of its tax returns. In 1982, the respondent was suspended for six weeks after he did not answer a rule to show cause for his failure to comply with a *subpoena duces tecum* issued by the Commission for the production of documents relating to the matters of three clients. The suspension was vacated after the respondent produced the documents.

In the instant matter, the Hearing Board recommended that the respondent be suspended for three years and until further order of this court. The Review Board adopted the findings of fact of the Hearing Board but disagreed with its proposed sanction, recommending instead that the respondent be suspended for two years. In its report and recommendation, the Review Board correctly observed that our court has held that the provision providing that a suspension continue "until further order of this court" is generally reserved for situations in which the attorney is mentally unstable. *In re Feder* (1982), 93 Ill. 2d 48, 52; *In re Grant* (1982), 89 Ill. 2d 247, 255; *In re O'Hallaren* (1976), 64 Ill. 2d 426, 434.

We agree with the Review Board that a suspension until further order of this court is excessive in this case. The Administrator notes that this court has found exception to the general rule that a suspension until further order of this court is reserved for attorneys who suffer from mental illness or some form of addiction. However, our review of the cases cited by the Administrator fails to reveal any which are substantially similar in character and degree of misconduct to the case before us.

This is not a case involving the commingling or conversion of client funds. (*In re Webb* (1985), 105 Ill. 2d 360; *In re Pass* (1985), 105 Ill. 2d 366.) Nor is it one where restitution is at issue. (*In re Webb* (1985), 105 Ill. 2d 360; *In re Goldstein* (1984), 103 Ill. 2d 123.) Respondent's transgressions, while constituting a serious breach of professional responsibility, are considerably less egregious than those found in *In re Levin* (1984), 101 Ill. 2d 535, and *In re Levinson* (1978), 71 Ill. 2d 486.

In *In re Levinson*, the more severe sanction of suspension until further order of this court was justified in view of the respondent's "extraordinary" disregard for the disciplinary proceedings instituted against him. In *Levinson*, the respondent neglected the handling of an adoption and failed to register and pay the annual attorney's registration fee required by our Rule 756 (65 Ill. 2d R. 756). Respondent ignored his clients' attempts to communicate with him, and when finally reached, he misrepresented his reasons for delay in completing the adoption.

The respondent in *Levinson* failed to file an answer to the Commission's complaint. Further, he failed to appear before either the Hearing Board or the Review Board. Only after this court approved the report of the Review Board and ordered the respondent disbarred did respondent appear before our court.

Although the respondent was allowed leave to file exceptions to the report of the Review Board and a brief in support of his motion to reconsider disbarment, he did not file the brief until some four months past the due date. This court found that such an irresponsible course of conduct warranted a suspension for six months and until further order of the court.

Although the respondent here did not initially file an answer to the Commission's complaint against him or appear at the proceeding before the Hearing Board to

which he had proper notice, he later appeared before the Hearing Board, and timely appeared before the Review Board and this court. Under these circumstances, we do not consider respondent's initial disregard of these proceedings, as reprehensible as it was, to be on the same par as that demonstrated in *Levinson* so as to require a suspension for a certain term *and until further order of court*. We also find the misconduct in *In re Levin* (1984), 101 Ill. 2d 535, far more egregious than that involved in this case.

In *Levin*, the respondent was suspended for three years and until further order of the court for neglecting the matters of six different clients and making misrepresentations to the clients and the referring attorneys. The respondent, who was previously disciplined for similar misconduct, falsely stated to his clients and the referring attorneys that he was either working on their cases or that a suit had been filed. As a result, one suit was dismissed and the statute of limitations lapsed for three other claims.

We do not believe that this case calls for the more serious sanction imposed in *Levin*. Although the respondent here, like the respondent in *Levin*, has been previously disciplined for similar misconduct, *Levin* is readily distinguished by the frequency and severity of the misconduct that it involved. Unlike *Levin*, the respondent here was found to have neglected only one legal matter entrusted to him and to have misrepresented his handling of that matter. While we find respondent's conduct deserving of substantial discipline, we can hardly say that it demands a sanction similar to that imposed in *Levin*, where the respondent was guilty of neglecting the affairs of six different clients and making misrepresentations in handling his clients' cases.

As this court has often stated, the purpose of our attorney disciplinary system is to safeguard the public and

maintain the integrity of the legal profession. (*In re Chapman* (1983), 95 Ill. 2d 484, 492; *In re Levin* (1979), 77 Ill. 2d 205, 211.) We do find cause for concern that the respondent's previous discipline for similar misconduct was insufficient to deter his transgressions in this case. On this record, and in light of the respondent's prior misconduct, we believe that a two-year suspension is necessary to protect the public and maintain the integrity of the legal profession.

The respondent is suspended from the practice of law for a period of two years.

*Respondent suspended.*

JUSTICE MILLER, specially concurring:

I concur in the result reached in this case, but I disagree with the majority's characterization of the respondent's conduct as "considerably less egregious" (115 Ill. 2d at 504) than that found in *In re Levinson* (1978), 71 Ill. 2d 486.

In both cases, the initial misconduct was similar. Levinson neglected an adoption case and misstated the facts to his clients. Here, the respondent neglected a worker's compensation case and misstated the facts to his client. Following complaints to the Administrator of the Attorney Registration and Disciplinary Commission, Levinson neglected the resulting disciplinary proceedings until after the court entered an order approving the report and recommendations of the Review Board. He then offered as an excuse for his neglect the extended illness of his son, who had passed away a little more than a month prior to the order. He also failed to pay the annual attorney's registration fee. In the present case, the respondent failed to respond to the Commission's complaints, subpoenas, notices of depositions and notices to produce documents and failed to attend the initial proceeding before the Hearing Board. When he

did respond to the complaint made by his client to the Administrator, he did so in such a way that he was later found guilty by the Hearing Board of making false statements to the Administrator with the intent to obstruct the disciplinary investigation.

The acts of misconduct of the respondents in both *In re Levinson* and the present case are egregious. The real difference between the two cases is that in *In re Levinson* there is no indication that the respondent had been charged with any prior acts of misconduct. In the case before us, the respondent has been suspended from the practice of law on two occasions before this, once for failing to finalize an adoption and for failing to conclude the administration of a decedent's estate and a second time for failing to comply with a *subpoena duces tecum* issued by the Commission for the production of documents relating to the matters of three additional clients.

Because the respondent here is being suspended from the practice of law for two years as opposed to the six months and until further order of court suspension ordered in *In re Levinson,* I concur in the result reached by the majority. I would not, however, depreciate the seriousness of the respondent's conduct by characterizing it as "considerably less egregious" (115 Ill. 2d at 504) than that found in *In re Levinson.*

JUSTICE MORAN, dissenting:

I respectfully dissent.

In determining the appropriate sanction to be imposed in a disciplinary proceeding, this court must appraise the respondent's conduct in reference to the underlying purposes of our disciplinary process. Those purposes are to maintain the integrity of the legal profession, to protect the administration of justice from reproach, and to safeguard the public. *In re LaPinska* (1978), 72 Ill. 2d 461, 473.

In rejecting the Hearing Board's recommendation that the respondent be suspended for a period of three years and until further order of this court, the majority concludes that the respondent's conduct is "considerably less egregious" than that found in *In re Levinson* (1978), 71 Ill. 2d 486. The respondent in *Levinson* had no prior history of discipline. In this case, however, the respondent was previously suspended from the practice of law for six months for neglecting the affairs of two different clients. (In re Guilford (1978), M.R. 2145.) Despite that suspension, however, respondent did not change his behavior so as to prevent the neglect underlying count I of the complaint.

Like the respondent in *Levinson*, the respondent here also obstructed the Commission's investigation of his misconduct. The majority reasons that, because the respondent eventually appeared before the Hearing Board and timely appeared before both the Review Board and this court, his disregard for these proceedings is not so severe as to warrant suspension until further order of this court. Contrary to the majority's view, I consider respondent's blatant disregard for his professional responsibility to the Commission to be at least as serious as the respondent's in *Levinson*. Unlike the respondent in *Levinson*, the respondent here had also been previously disciplined for failing to cooperate with the Commission. In 1982, the Commission issued a *subpoena duces tecum* for the production of documents relating to the matters of three of the respondent's clients. The respondent failed to produce the documents. After he did not answer a rule to show cause for his failure to comply with the subpoena, this court suspended the respondent for six weeks. That suspension did not, however, deter the respondent's efforts to obstruct the proceedings now before us. Initially, respondent ignored the Commission's complaint against him. The Hearing Board noted that,

"[c]onsistent with his prior conduct, he refused in this case to appear or produce requested documents at his deposition or at the hearing on January 8, 1985." In addition, there is yet another aggravating factor which was not present in *Levinson*. During the inquiry stage of these proceedings, the respondent wrote a letter to the Commission in which he knowingly misrepresented his actions in handling Brandon's claim.

The majority also found that the respondent's misconduct was not as serious as that found in *In re Levin* (1984), 101 Ill. 2d 535. Like the respondent in *Levin*, the respondent here had been previously disciplined for neglecting clients' affairs. The majority concludes that *Levin* is distinguishable in that the respondent there was found to have neglected the affairs of six different clients. As already discussed, however, the respondent here was also previously disciplined for his failure to cooperate with the Commission's investigation of his conduct. This aggravating factor was not present in *Levin*. I therefore believe that a more severe sanction is necessary.

In my view, respondent's continuing course of neglecting his clients' affairs and his contempt for the disciplinary process manifest his disregard for his professional obligations to his clients and to the Commission. Such disregard for those obligations adversely reflects upon his character, fitness and ability to practice law. Under the facts of this case, and in light of respondent's prior history of discipline, I do not believe that a suspension for two years will adequately protect the public or maintain the integrity of the legal profession. I believe these interests would be best served by adopting the recommendation of the Hearing Board by suspending the respondent for a period of three years and until further order of this court.