(No. 81878.—

*In re* RICHARD ANTHONY RINELLA, Attorney, Respondent.

*Opinion filed February 20, 1997.—Rehearing denied March 31, 1997.*

BILANDIC and McMORROW, JJ., took no part.
FREEMAN, J., concurring in part and dissenting in part.
Disciplinary proceeding.

Rosalyn B. Kaplan, Wendy J. Muchman, Mary K. Foster and Alison E. O'Hara, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Michael W. Coffield, William J. Harte, and David J. Walker, all of Chicago, for respondent.

CHIEF JUSTICE HEIPLE delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint with the Hearing Board charging respondent, Richard Anthony Rinella, with four counts of professional misconduct for engaging in sexual relations with clients and testifying falsely before the Commission. The Hearing Board found that respondent had committed the misconduct charged in each of the counts and recommended that respondent be suspended from the practice of law for a period of three years and until further order of this court. The Review Board approved the findings and recommendation of the Hearing Board, except that it recommended that respondent's suspension expire automatically at the end of three years. We granted respondent's petition for leave to file exceptions. For the reasons that follow, we approve in part and reject in part the recommendation of the Review Board, and approve the recommendation of the Hearing Board. Respondent is suspended from the practice of law for three years and until further order of this court.

## FACTUAL AND PROCEDURAL HISTORY

### I. The Complaint and Answer

Count I of the Administrator's complaint alleged that in July of 1983 Jane Doe[1] retained respondent to represent her in a dissolution of marriage proceeding and paid respondent a fee of $7,500. The complaint alleged that respondent and Doe had a sexual relationship that began in approximately July of 1983 and

---

[1]This court has granted Jane Doe's motion to conceal her identity in this proceeding.

continued throughout the duration of respondent's representation of her. The complaint alleged that the relationship was initiated by respondent when he made sexual advances to Doe during her second visit to his office, and that Doe submitted to respondent's advances because she was afraid that refusing to do so would adversely affect respondent's representation of her and because she could not afford to hire another lawyer after paying respondent his retainer. The complaint charged that by engaging in the conduct alleged in count I, respondent had committed overreaching and violated Rules 1—102(a)(5), 5—101(a), 5—102(a), and 5—107(a) of the Code of Professional Responsibility (87 Ill. 2d Rs. 1—102(a)(5), 5—101(a), 5—102(a), 5—107(a)) and Supreme Court Rule 771 (94 Ill. 2d R. 771).

Count II of the complaint alleged that in March of 1991 and March of 1993, while testifying under oath before the Commission, respondent falsely stated that he had never had sexual relations with Jane Doe, that he had not had sex with her at her house, and that he had never had nude photographs taken of himself at her house. Count II further alleged that in June of 1993, while again testifying before the Commission, respondent retracted these denials after he was shown a nude picture of himself which he admitted was taken at Doe's house. Count II charged that respondent's March 1991 and March 1993 testimony violated Rules 8.1(a)(1), 8.4(a)(3), 8.4(a)(4), and 8.4(a)(5) of the Rules of Professional Conduct (134 Ill. 2d Rs. 8.1(a)(1), 8.4(a)(3), (a)(4), (a)(5)) and Supreme Court Rule 771 (134 Ill. 2d R. 771).

Count III of the complaint alleged that in November of 1983, Jeanne Metzger retained respondent to represent her in a dissolution of marriage proceeding and paid him a retainer of $2,500. The complaint alleged that on Saturday, December 10, 1983, respondent scheduled an appointment with Metzger at his office to

discuss her case, and that after Metzger arrived and entered his office, respondent barred the door with a chair and initiated sexual activity with her. The complaint alleged that Metzger submitted to respondent's sexual advances because she believed that the quality of respondent's representation of her would be adversely affected if she refused. The complaint further alleged that respondent engaged in sexual activity with Metzger on two other occasions thereafter, including once on January 11, 1984, at which time respondent asked Metzger to supply him with nude pictures of her. The complaint also alleged that during a court appearance on February 8, 1984, to which respondent had asked Metzger to bring an instant camera, respondent instructed Metzger to answer all of his questions relating to her divorce in the affirmative, regardless of how she wished to respond. The complaint charged that by engaging in the conduct alleged in count III, respondent committed overreaching and violated Rules 1—102(a)(5), 5—101(a), 5—102(a), 5—107(a), and 7—101(a)(3) of the Code of Professional Responsibility (87 Ill. 2d Rs. 1—102(a)(5), 5—101(a), 5—102(a), 5—107(a), 7—101(a)(3)) and Supreme Court Rule 771 (94 Ill. 2d R. 771).

Count IV alleged that Sandra Demos retained respondent's law firm in 1980 to represent her in a dissolution of marriage proceeding. The complaint alleged that although respondent did not have primary responsibility for Demos' case, he would call her frequently to ask her to meet him socially, and during these telephone calls would discuss with her items of a personal nature that he could only have learned from reviewing her file. The complaint alleged that on one occasion around 1982, respondent made sexual advances to Demos and engaged in sexual relations with her in his automobile, after which he immediately took her to a motel room where he attempted to have sexual intercourse with her. The

complaint further alleged that Demos submitted to respondent's sexual advances because she believed that refusing to do so would adversely affect his firm's representation of her. The complaint charged that by engaging in the conduct alleged in count IV, respondent committed overreaching and violated Rules 4—101(b)(3), 5—101(a), and 5—102(a) of the Code of Professional Responsibility (87 Ill. 2d Rs. 4—101(b)(3), 5—101(a), 5—102(a)) and Supreme Court Rule 771 (87 Ill. 2d R. 771).

In his answer to the complaint, respondent denied the specific instances of sexual encounters with Doe and denied having engaged in any sexual relations with Metzger or Demos. As to the allegations of perjury, respondent admitted that his testimony before the Commission was untrue, but maintained that his answers were justified because any sexual activity with Doe occurred after his representation of her had ceased and was therefore not a proper subject of the Commission's inquiry. Respondent also filed a motion to dismiss the complaint based primarily on the ground that no disciplinary rule specifically forbids sexual relations between an attorney and his client. The Commission denied this motion and set the matter for hearing.

## II. The Evidence

Before the Hearing Board, Jane Doe testified that during her second visit to respondent's office in July 1983, respondent came over to the sofa she was sitting on and began fondling her. She testified that she began crying and that respondent told her to stop crying. She testified that she then performed fellatio on respondent. She also testified that during the sexual activity, respondent said "it would make it easier." She testified that she did not want to engage in sexual activity with respondent but felt she had to because she had just changed lawyers and paid respondent a large retainer.

Doe further testified that one day in the spring of 1984, she and respondent were undressed and engaging in fellatio in her bedroom at her house when her ex-husband, John Doe, walked into the room. Jane Doe testified that she put on a robe and followed John Doe downstairs while respondent hid in a closet. She testified that John Doe then asked where the couple's five-year-old son was, and she responded that he was at a friend's house. She testified that John Doe periodically refers to this incident when she requests timely maintenance or child support payments from him.

John Doe testified before the Hearing Board that the incident in the bedroom at his wife's house occurred a few weeks before the entry of a supplemental judgment resolved issues of property distribution, maintenance, and child support in the Does' dissolution of marriage proceeding.

Also before the Hearing Board, Jane Doe identified two exhibits as photographs of respondent in the nude taken at her house in the spring of 1984. She said the photographs showed wallpaper in her house which she had removed in the fall of 1984.

Jane Doe admitted that she attended a holiday luncheon sponsored by respondent's law firm in 1987 or 1988, and that she sent respondent a humorous postcard in January 1986 which she signed "Lustfully Yours."

Respondent testified before the Hearing Board that while he had engaged in sexual activity with Jane Doe, this activity took place in late 1986, or in 1987 or 1988, after he had stopped representing her. He denied having sex with Jane Doe in his office in July 1983, and denied having sex with her in her house at any time. He testified that he went to Jane Doe's house on a few occasions during his representation of her, and that John Doe came to the house on one of those occasions, but said that he and Jane Doe were standing in an

upstairs hallway fully clothed when John Doe encountered them. Respondent also testified that the photographs of him in the nude were taken on an occasion when he and Jane Doe engaged in sexual activity in late 1986, or in 1987 or 1988. Respondent admitted that in prior testimony before the Commission he falsely denied ever having had sex with Jane Doe and having had nude pictures taken, but he stated that he believed these answers were justified because his sexual relationship with Doe occurred after he stopped representing her.

Jeanne Metzger testified that she retained respondent in November 1983, and that on a Saturday in December 1983, she had an appointment at respondent's office to discuss her case. She testified that when she entered respondent's office, respondent closed the door behind her and propped a chair up against the doorknob. She testified that respondent then came towards her, unzipped his pants, and sat down on the couch beside her. She testified that respondent then put his hand on her head, had her lean towards him, and pushed her head down while stating "You don't have to do this if you don't want to." Metzger testified that she then performed fellatio on respondent. She testified that while she did not want to do so, she felt she had to for the welfare of her children, whose custody was contested.

Metzger further testified that respondent scheduled another appointment with her for December 14, 1983, at his office, and that when she arrived, respondent told her to go downstairs and wait on the sidewalk outside the building. She testified that respondent then joined her outside and took her by taxi to an apartment in a high-rise building. She testified that after entering the apartment, respondent undressed and sniffed a bottle of liquid, and then asked her to do the same. She testified that she sniffed the bottle and got an "extreme high,"

and that the two then had sex. Metzger further testified that on January 11, 1984, after a deposition in her case, respondent again took her to the apartment and asked her to sniff the bottle of liquid, and that the two then had sex again. She testified that on this occasion, respondent told her to make an appointment to get a "tummy tuck," and that he gave her the name of the doctor with whom she should make the appointment. She also testified that on this occasion, respondent said that he wanted to take pictures of her "from the neck down" and offered to let her take similar pictures of him, but that there was no camera in the apartment.

Metzger further testified that respondent told her to bring an instant camera to a court appearance in her case one day in February 1984. She testified that just before the court appearance, respondent instructed her to answer "yes" to all of his questions. She also testified that respondent asked her before the hearing if she had brought the camera, and that she said "yes" because she was afraid telling him the truth would affect his representation that day. She testified that immediately after the court appearance, when she told respondent that she did not really have the camera, he became angry and left abruptly, refusing to discuss with her a number of questions she had regarding the testimony she had given that day. Metzger testified that shortly thereafter, she hired another attorney to replace respondent.

Respondent testified that he never had sexual relations with Metzger. He denied propping a chair up against the door during an appointment with Metzger. He denied ever going with her to an apartment and having sex. He also denied asking her to bring a camera to a court appearance.

Sandra Demos testified before the Hearing Board that she retained respondent's law firm in 1980 to rep-

resent her in a dissolution of marriage proceeding, and that respondent's father was the primary attorney on her case. Demos testified that she met respondent for the first time in the lobby of the law firm, and that after this meeting, he began calling her frequently to ask her out for a drink. She stated that although she continually refused to meet him, the phone calls went on for months, and that during the conversations, respondent discussed information he could only have learned by viewing her confidential files, such as her sexual history with her husband.

Demos testified that she finally agreed to meet respondent one day in March 1982. She testified that they met and had several drinks, and that respondent afterwards offered to drive her home. She testified that respondent then drove her to a harbor, parked the car, and began kissing and fondling her. She testified that she did not want to have sexual relations with him, but submitted to his advances because she feared her case would be mishandled if she did not. She further testified that after approximately 15 minutes, respondent, without saying anything to her, drove the car to a motel and took her into a room. She testified that respondent attempted to have sexual intercourse with her, but had trouble maintaining an erection, and that he then began sniffing some liquid in a bottle. She testified that respondent then attempted to force her to perform fellatio on him, but that she refused. She testified that after they had spent approximately one hour in the motel, respondent drove her home.

Respondent testified that he did not recall ever meeting Demos, although he might have met her once briefly in the lobby of his law firm. He denied ever discussing Demos' case with other attorneys at his firm or viewing the firm's files on her case. He also denied that he ever had sexual relations with her or took her to a motel.

### III. Findings and Recommendations

The Hearing Board found that respondent engaged in sexual relations with each of the three women while he or his firm represented them. The Board found that this conduct by respondent constituted overreaching because he used his position of influence over the clients to pressure them to engage in sexual relations. The Board noted that all of the women testified that they did not want to engage in sexual relations with respondent but felt that they had to in order to ensure that they were effectively represented and because they could not afford to hire another lawyer.

The Hearing Board also found that respondent violated the following rules of the Code of Professional Responsibility: Rule 1—102(a)(5), by engaging in conduct prejudicial to the administration of justice (87 Ill. 2d R. 1—102(a)(5)); Rule 4—101(b)(3), by using client confidences for his own advantage in his dealings with Sandra Demos (87 Ill. 2d R. 4—101(b)(3)); Rule 5—101(a), by failing to withdraw from the women's cases when his professional judgment may have been affected by his own personal interest (87 Ill. 2d R. 5—101(a)); and Rule 5—107(a), by failing to represent his clients with undivided fidelity (87 Ill. 2d R. 5—107(a)). As to count II, the Board found that respondent violated Rules 8.1(a)(1), 8.4(a)(3), 8.4(a)(4), and 8.4(a)(5) of the Rules of Professional Conduct by giving false testimony before the Commission. 134 Ill. 2d Rs. 8.1(a)(1), 8.4(a)(3), (a)(4), (a)(5). Finally, the Board found that respondent violated Supreme Court Rule 771 by engaging in conduct which tends to defeat the administration of justice or bring the courts or the legal profession into disrepute. 134 Ill. 2d R. 771.

The Board found that the Administrator did not prove that respondent violated Rule 5—102(a) by failing to withdraw from employment when it was obvious that he might be called as a witness other than on behalf of

his clients, or Rule 7—101(a)(3) by intentionally prejudicing or damaging his clients during his representation of them. 87 Ill. 2d Rs. 5—102(a), 7—101(a)(3).

The Hearing Board recommended that respondent be suspended from the practice of law for a period of three years and until further order of this court. The Review Board approved each of the findings and the recommendation of the Hearing Board, except that it recommended that respondent's suspension expire automatically at the end of three years.

## ANALYSIS

### I. Respondent's Sexual Relations with Clients

Respondent takes exception to the Hearing Board's finding that he committed sanctionable misconduct. He contends that he cannot be sanctioned for engaging in sexual relations with his clients because no disciplinary rule specifically proscribes such conduct, and that imposing a sanction under these circumstances would violate due process because he did not have adequate notice that his conduct was prohibited. He also asserts that his conduct did not violate the specific rules cited by the Board and did not constitute overreaching.

Initially, we reject respondent's contention that attorney misconduct is sanctionable only when it is specifically proscribed by a disciplinary rule. On the contrary, the standards of professional conduct enunciated by this court are not a manual designed to instruct attorneys what to do in every conceivable situation. *In re Gerard*, 132 Ill. 2d 507, 538 (1989). As stated in the preamble to the Illinois Rules of Professional Conduct:

> "Violation of these rules is grounds for discipline. No set of prohibitions, however, can adequately articulate the positive values or goals sought to be advanced by those prohibitions. This preamble therefore seeks to articulate those values ***. Lawyers seeking to conform their conduct to the requirements of these rules should look to

the values described in this preamble for guidance in interpreting the difficult issues which may arise under the rules." 134 Ill. 2d Illinois Rules of Professional Conduct, Preamble, at 470.

The preamble then likens the practice of law to a public trust, and charges lawyers with maintaining public confidence in the system of justice by acting competently and with loyalty to the best interests of their clients. 134 Ill. 2d Illinois Rules of Professional Conduct, Preamble, at 470.

In support of his contention that only specifically proscribed conduct is sanctionable, respondent relies on *In re Corboy*, 124 Ill. 2d 29 (1988). In that case, this court refused to impose sanctions on certain attorneys who made gifts to a judge because the attorneys could not reasonably have been on notice that their conduct was prohibited and because there was considerable belief among members of the bar that the attorneys had acted properly. *In re Corboy*, 124 Ill. 2d at 45. In contrast, we do not believe that respondent, or any other member of the bar, could reasonably have considered the conduct involved here to be acceptable behavior under the rules governing the legal profession.

The Hearing Board found that respondent failed to withdraw from representation when the exercise of his professional judgment on behalf of his clients reasonably could have been affected by his own personal interests, thereby violating Rule 5—101(a) of the Code of Professional Responsibility. 87 Ill. 2d R. 5—101(a). The Hearing Board also found that respondent failed to represent his clients with undivided fidelity, thereby violating Rule 5—107(a). 87 Ill. 2d R. 5—107(a). We believe the record amply supports these findings. The Hearing Board was justified in concluding that respondent took advantage of his superior position as the women's legal representative to gain sexual favors from them during times when they were most dependent

upon him. Each of the women testified that she did not want to engage in sexual relations with respondent, but felt she needed to submit to his advances in order to ensure the vigorous representation of her interests. By placing his clients in such situations of duress, respondent compromised the exercise of his professional judgment on their behalf and failed to represent them with undivided fidelity. Furthermore, with regard to Sandra Demos, the record supports the Hearing Board's finding that respondent used a confidence or secret of a client for his own advantage in violation of Rule 4—101(b)(3). 87 Ill. 2d R. 4—101(b)(3).

We also believe the record supports the Hearing Board's finding that respondent engaged in conduct prejudicial to the administration of justice, thereby violating Rule 1—102(a)(5). 87 Ill. 2d R. 1—102(a)(5). Two of the women described incidents in which respondent, during appointments he had scheduled with them in his office to discuss their cases, made completely unsolicited sexual advances which included undressing himself. Respondent's sexual relations with all three clients originated solely from the provision of legal services, since he did not know the women prior to their retaining him or his firm. These abuses of respondent's professional relationship with clients were clearly prejudicial to the administration of justice.

Respondent's conduct is also sanctionable as overreaching. An attorney commits overreaching when he takes undue advantage of the position of influence he holds *vis-a-vis* a client. *In re Stillo*, 68 Ill. 2d 49, 53 (1977). By making lewd and unsolicited sexual advances to his clients during appointments purportedly scheduled to discuss their cases, and by causing the clients to believe that their interests would be harmed if they refused his advances, respondent took undue advantage of his position and thereby committed overreaching.

We further believe the Hearing Board was justified in finding that respondent's misconduct violated Supreme Court Rule 771 by tending to defeat the administration of justice or to bring the courts or the legal profession into disrepute. 94 Ill. 2d R. 771.

Respondent contends that his alleged sexual misconduct should not be subject to sanction because there is no evidence that it adversely affected his or his firm's representation of the women. In this regard, we note that Jeanne Metzger testified that respondent refused to consult with her after a court appearance because he was angry that she had not brought a camera with her to take nude pictures. Even absent such evidence of actual harm, however, respondent's sexual conduct would still be sanctionable because it posed a significant risk of damaging the clients' interests. See *In re Lewis*, 118 Ill. 2d 357, 362-63 (1987).

Respondent also challenges the sufficiency of the evidence that he engaged in the sexual activity alleged in the complaint. Factual findings of the Hearing Board are entitled to great deference, given the Board's superior capabilities as a trier of fact, and will not be disturbed unless they are against the manifest weight of the evidence. *In re Timpone*, 157 Ill. 2d 178, 196 (1993). Considering all of the testimony in this case, we cannot say that the Hearing Board's findings are manifestly erroneous.

For the above reasons, we approve the Hearing Board's findings of fact and conclusions of law regarding respondent's sexual misconduct with the former clients.

## II. Respondent's Prior Testimony Before the Commission

Respondent contends that his admittedly false testimony before the Commission is not sanctionable because the questions posed to him were ambiguous, because information concerning his private sexual rela-

tions was protected by the right of privacy, and because he later recanted his false testimony. We find no merit in any of these contentions. Respondent was clearly asked if he had ever had sexual relations with Jane Doe, to which he falsely responded "no." Furthermore, to the extent that respondent's sexual conduct constituted an abuse of his professional position, that conduct took on a public concern. Finally, we observe that respondent did not voluntarily recant his false testimony, but rather recanted only when confronted with undeniable pictorial evidence that he had lied to the Commission. Under these circumstances, his false testimony is entirely inexcusable. We therefore approve the Hearing Board's findings that respondent violated Rules 8.1(a)(1), 8.4(a)(3), 8.4(a)(4), and 8.4(a)(5) of the Rules of Professional Conduct and Supreme Court Rule 771. 134 Ill. 2d Rs. 8.1(a)(1), 8.4(a)(3), (a)(4), (a)(5), 771.

### III. Propriety of Recommended Sanction

Respondent contends that the three-year suspension recommended by the Hearing and Review Boards is an excessive sanction for the instant misconduct. In deciding on an appropriate sentence, the Hearing Board considered the following factors in aggravation: respondent's pattern of misconduct, his selfish motive, the nonconsensual nature of his sexual relations with the women, his inability to appreciate the wrongfulness of his conduct, and his false testimony before the Commission. In mitigation, the Board considered that this is respondent's first charged instance of misconduct, as well as the testimony of numerous witnesses regarding respondent's good character and reputation in the legal community.

We do not believe that the recommended three-year suspension is an excessive sanction. Respondent violated numerous ethical standards in his dealings with three separate clients. He then compounded this misconduct

by concealing and denying it while it was under investigation. Moreover, we believe that the seriousness of the violations in this case warrants imposition of the suspension until further order of this court, as recommended by the Hearing Board.

Accordingly, we approve in part and reject in part the recommendation of the Review Board, and approve the recommendation of the Hearing Board. Respondent is suspended from the practice of law for three years and until further order of this court.

*Respondent suspended.*

JUSTICES BILANDIC and McMORROW took no part in the consideration or decision of this case.

JUSTICE FREEMAN, concurring in part and dissenting in part:

The majority finds that respondent has, by his conduct, violated several rules under our Code of Professional Responsibility. Therefore, the majority has suspended respondent from the practice of law for a period of three years and until further order of the court. I agree that respondent's conduct warrants sanction, and given the nature and seriousness of that conduct, suspension from the practice of law is appropriate. However, because I fail to see how either the public is further protected or the integrity of the legal profession is further safeguarded by the "until further order" portion of the sanction, I disagree to that extent.

That said, I find it apt to comment on an additional aspect of this case. The respondent has urged that because the Code offers no explicit guidance on the issue of sexual relationships between an attorney and client, his conduct should not subject him to discipline. I agree with the majority that the absence of an explicit rule concerning sexual relationships in the context of the attorney-client relationship is not a reason to excuse

respondent's conduct. No rule need have existed to inform respondent that his conduct, which was so obviously improper, was violative of the rules of professional conduct.

Respondent's misconduct consisted of more than a single isolated incident involving one client. Furthermore, this was conduct which went beyond the mere verbalization of sexual desire. At various times during the course of respondent's or his firm's representation, the respondent repeatedly engaged in uninvited physical sexual conduct with three different clients. In each of the three cases, respondent's sexual advances were both unsolicited and unwelcome. Further, some of these sexual episodes lasted no longer than did the period of the legal representation. These facts not only evidence the gratuitous nature of the conduct, but also support the complainants' characterization of respondent's advances as coercive.

Therefore, had the circumstances of this case been different, the absence of an express rule might be reason either to excuse the conduct or certainly to impose a lesser sanction. However, this conduct far exceeds any innocent mistake in professional judgment which, in the absence of an express proscription, would merit such leniency.

As a practical matter, there could never be a set of rules which contemplates every aspect of the many encounters between an attorney and client. Furthermore, and as the majority so aptly points out, implicit in the Code is that every attorney, in the exercise of professional judgment, will conduct him or herself in a manner which will not potentially compromise the attorney-client relationship. Given that, some may disagree that there need be any rule which expressly governs sexual relations between an attorney and client. Yet, few could disagree that a *per se* rule prohibit-

ing sexual relations between an attorney and client during the course of the legal representation would provide the clearest guidance to practitioners in this regard. Incidentally, our rules committee is on the threshold of fashioning a rule to address this very issue.

Returning to the "until further order" portion of the sanction, I again note my disagreement. Typically, the "until further order" sanction has been reserved for those cases where the attorney has been the subject of repeated disciplinary proceedings (see, *e.g.*, *In re Levin*, 101 Ill. 2d 535 (1984) (respondent involved in repeated incidents of misconduct and prior discipline)) or where a condition which renders an attorney not fit to practice is amenable to treatment and change (see, *e.g.*, *In re Guilford*, 115 Ill. 2d 495 (1987) (until further order sanctions have been ordered in cases in which attorneys suffered mental illness or some form of addiction)). In such cases the disciplined attorney is afforded an opportunity to establish that the conduct or the condition which required suspension has actually improved or changed. Correspondingly, the court has an opportunity to assess the attorney's rehabilitation and readiness to return to the practice of law.

Respondent's conduct, which was largely confined to sexual relations with clients during the course of his or his firm's representation of them, is not conduct which is amenable to assessment of change. There are no allegations of sexual misconduct occurring outside of the attorney-client relationship. Therefore, for purposes of reinstatement, it is not apparent how respondent will demonstrate, in any meaningful way, and how this court will be able to assess, with much reliability, whether respondent has truly mended his ways. Further, respondent has not been subject to either prior or repeated disciplinary proceedings which would, for those reasons, warrant tightening the reins on his ability to re-enter the practice.

Finally I have become aware that, in practice, when an "until further order" sanction has been imposed, the process for reinstatement, which is conducted through our Attorney Registration and Disciplinary Commission, may take well up to two years. In such cases, the "until further order" sanction operates to enhance the sanction by extending the suspension period. Absent the necessary showing that a suspended attorney's suspension should continue, any extension of that suspension, even an unintentional one, is simply unfair to the practitioner.

As a means of assessing fitness to practice law, the "until further order" sanction is invaluable. However, to the extent that the sanctionable conduct at issue is not amenable to measurement for improvement, imposition of an "until further order" sanction serves no valid purpose. This sanction should be reserved only for those cases where it will function most effectively as an assessment tool. This court, as overseers of the practice of law in Illinois, must take care to insure that the very sanction by which we assess the need for continued suspension from the practice of law does not, merely by its imposition, effect a baseless continuation of the suspension.

My disagreement with the "until further order" sanction in this case has more to do with the general operation of the sanction itself than with the fact that it was imposed on this particular respondent. Clearly, respondent's misconduct was sanctionable. However, because of the nature of this respondent's misconduct, the "until further order" sanction will be ineffective to assess, with much reliability, his fitness to return to the practice of law.

Therefore, I respectfully dissent from this portion of the court's judgment.